GENERAL GEOPHYSICAL CO. *v.* BROWN.

In Banc. Feb. 14, 1949.

(38 So. (2d) 703)

Jackson, Young, Daniel & Mitchell, for appellant.

192

194

196

Grubbs & Farmer, for appellee.

202

**McGehee, C. J.**

This appeal is from a judgment for damages for the destruction of a water-well, by the use of explosives by reason of geophysical explorations, and for the loss of time in obtaining water elsewhere for use on the farm of plaintiff.

The appellant, General Geophysical Company, was engaged in making certain geophysical explorations for oil and gas in Simpson County, and particularly in the community where the appellee, Newton L. Brown, owned seventy acres of farm land on which he resided with his family. The appellant had previously located what is termed a "shot-point," a distance of 550 feet from the

water-well and residence of the appellee and on his land, but without any express permission, either oral or written, from the owner to do so. The land had never been leased to anyone to be explored for oil and gas.

On March 31, 1947, the defendant had exploded a charge of dynamite at a depth of from 120 to 150 feet at the "shot-point" above mentioned, in connection with its use of a seismograph and galvanometer for readings as to the formations several thousand feet beneath the surface, and the explosion had caused the water-well of the appellee, which was a depth of 76 feet, to become muddy and to remain so for a period of three days thereafter, according to the testimony on behalf of the plaintiff.

It appears that within about three days after the water in the well had cleared up, the agents and employees of of the appellant, Geophysical Company, again went upon the land of the appellee and obtained from his wife a limited consent to again make geophysical explorations on the land. At that time, the appellee was on the farm doing some work in connection with his farming operations, and he observed the agents and employees of the appellant before they shot another charge of 30 pounds of dynamite at the depth aforesaid, and in the same hole, where this had been done on March 31, 1947. His explanation as to why he did not go to where they were and request that they not shoot this test well again is that he was afraid to go near where such an explosion was to take place.

Mrs. Brown testified that she consented for them to make geophysical tests on the land on the said 5th day of April, 1947, but that she based such consent upon the express condition that they not do so near the plum orchard where they had been before, which, according to the testimony on behalf of the plaintiff, was too near the water-well and residence; but that they exploded this second charge of dynamite at the very place where she had told them not to do so, using the same hole, as aforesaid, where the first charge of dynamite had been placed;

and which had previously caused the water-well to become muddy, as aforesaid.

The only witness who testified on behalf of the appellant as to the extent of the permission which Mrs. Brown undertook to give did not expressly deny in particular her testimony as to the extent of consent given, but conceded that she "did mention staying a distance from the house and well." At any rate, there was presented an issue for the jury as to whether or not the defendant had willfully violated the express terms of the limited consent given and had thereby become a trespasser ab initio.

The proof on behalf of the plaintiff further discloses that the supply of water in the well had been inexhaustible for many years before the explosion complained of, that the plaintiff had not been able to draw enough water therefrom to lower the depth of the water in the well to any appreciable extent for the reason that it would refill as fast as water was drawn therefrom until the explosion of this last charge of dynamite on the said 5th day of April, 1947; that immediately prior to the said explosion Mrs. Brown had drawn a bucket of clear water from the well, and that immediately thereafter she returned to the well for another bucket of water and found that it was very muddy and unfit for use; and that the water supply was released and disappeared to such an extent that the well was of no further use to the plaintiff, and she was amply corroborated by the plaintiff and other witnesses in that behalf. And from this date to July 9, 1947, the plaintiff had been unable to obtain another well, and in the meantime he and his wife had had to bring all of the water used on the farm from the well of a neighbor three-fourths of a mile away.

 It was further shown that the supply of water in the new well which was obtained at an expense of $225 on July 9, 1947, had at all times up to the date of the trial been inadequate to such an extent as to greatly reduce the value of the plaintiff's seventy-acre farm; and

that the injury done by the act of the defendant is therefore a permanent injury to the realty, making applicable "The Before and After Rule as to Value," the measure of damages to the farm.

The declaration of the plaintiff alleged, among other things, that the defendant went upon the land of the plaintiff "and without authority did then and there negligently, carelessly, wantonly and recklessly shoot and cause to be shot a test well" and caused the damage complained of. But, it is contended by the appellant that the case was tried solely on the theory of negligence, and that there was no proof that the geophysical operations were not conducted according to approved methods and practices, and that the defendant would not be liable unless it was guilty of negligence in the manner and method of conducting such explorations. ■■ We find that we are not able to agree with this contention for the reason that the declaration alleged, as aforesaid, that the defendant went upon the land without authority, and the plaintiff presented his proof upon the theory that the defendant was a trespasser ab initio because of its violation of the limited permission for the exploration to be made, and was also negligent in exploding the dynamite too near the well and residence of the plaintiff. ■■ In other words, the plaintiff assumed a greater burden than was necessary in that behalf, since the defendant, if a trespasser, was liable for the damages to the property and for the value of the loss of time and of the labor done in bringing water from a distance for use on their farm, without regard to the degree of care with which its explorations may have been carried on.

This principle of liability is sustained by approximately twenty decisions from other jurisdictions cited in the brief of the appellee, and is in accord with the settled law of our own State. We find that the authorities cited by the appellant in support of its contention of nonliability in the absence of a negligent manner of conducting such operations are based upon the theory that the defend-

ant had obtained authority to make the exploration at the place in question, or anywhere on the land of the plaintiff.

It is also contended by the appellant that the proof is insufficient to show that the damage to the well was proximately caused by the explosion complained of, but we think that the evidence was amply sufficient to present an issue for the jury on that question. A well-borer of approximately twenty-nine years experience testified as to the trouble that he had been having in that area in getting an adequate supply of water since the explosions occurred, whereas he had never had any difficulty in doing so theretofore, if he went deep enough. Then, too, the testimony of Mrs. Brown clearly established that the effect on the well from the explosion was immediate, and the damage was clearly shown to have been a permanent injury to the realty.

It is next assigned for error, and the point was properly reserved in a motion for a new trial, that the verdict is excessive. But, we think that the proof as to the value of the farm before and after the adequate supply of water was destroyed, and as to the other damages, was such that we are unable to say that the verdict is so grossly excessive as to evince bias, passion or prejudice on the part of the jury against the defendant.

Special emphasis is placed upon an assignment of error which is based upon an instruction which told the jury, in effect, that if they believed the facts testified to on behalf of the plaintiff, a verdict should be rendered for the plaintiff "in an amount reasonable to compensate him, the said Newton L. Brown, for damage sustained by him in an amount not to exceed the sum sued for in the declaration, namely $1,500." The jury returned a verdict for $500 less than this amount, and we cannot therefore say that it adopted any suggestion as to the amount that this instruction may have contained; and that since we do not think the verdict is grossly excessive, we are not justified in reversing and remanding the cause for a new

trial on that account. Then, too, we point out that the instruction read: "In an amount reasonable to compensate him", not to exceed, etc.

We have carefully examined all of the assignments of error and have reached the conclusion that the case should be affirmed.

Affirmed.