MAGNOLIA PETROLEUM CO. v. McCOLLUM.

Division A. Mar. 19, 1951.

No. 37869 (51 So. (2d) 217)

Brunini, Everett, Grantham & Quin, for appellant.

R. C. Russell and L. D. Pittman, for appellee.

Kyle, J.

Appellee, Scott McCollum, obtained a judgment in the circuit court against appellant, Magnolia Petroleum Company, for damages for the destruction of a water well which resulted from the explosion of dynamite charges set off by the appellant in making seismographic tests on appellee's 66-acre farm.

The appellant was engaged in making geophysical explorations for oil and gas in and around the Town of Mize during the month of March 1949, and on March 24 the appellant's agent in charge of the blasting operations with a crew of workmen entered upon appellee's land and fired two shots of dynamite explosives at depths of 45 to 55 feet below the surface of the ground and within a distance of approximately 350 yards from the appellee's water well. The water well was approximately 85 feet deep, and was curbed with yellow heart pine curbing. According to the testimony of appellee's witnesses the well, prior to the explosion of the dynamite, provided an abundant supply of pure clear freestone water, which was used by appellee's family for drinking, cooking and washing purposes, and for watering the livestock. After the underground explosions had been made by the appellant, the water immediately developed a milky appearance and became unfit for use, and the well finally dried up. Appellee and the other members of his family found it necessary to carry water from the well of a nearby neighbor to their home for drinking, washing and cooking, or to catch rain water in buckets and barrels for household

uses, and to water the stock at a pond about 350 yards away.

After the lapse of several months appellee made arrangements with Leon Bryant to drill a new well for him. The new well was drilled to a depth of 101 feet, or 16 feet deeper than the old well, and was located only a few yards away from the old well. According to the testimony of appellee's witnesses the new well did not provide the same kind of abundant supply of pure clear water that the old well provided before it was damaged by the dynamite explosion. The water in the new well at times presented a milky appearance, and only a few buckets of water could be drawn from the new well at any one time. These facts were testified to by appellee's wife and son and by one of appellee's neighbors who had been accustomed to get water out of the old well and who drew water from the new well after the new well had been provided.

The appellee offered abundant proof of the ample supply and superior quality of the water drawn from the old well prior to the dynamite explosions. The appellee and his family had occupied the property only a few months before the explosion, but their testimony as to the abundant quantity and fine quality of the water furnished by the old well was confirmed by the testimony of Mack Spell who lived on the land and occupied the main dwelling house during the year immediately preceding appellee's purchase and occupancy of the 66-acre tract. Spell testified that he had drawn as much as fifty buckets of water at a time from the well to water stock, and that the water never became discolored or murky in appearance while he lived on the place. Mrs. Ollie Ashley testified that she was a close neighbor of the McCollums and got all of her water from the McCollum well before the blasting, that the well was a very fine well and provided an abundant supply of water. Mrs. Mattie Bridges testified that the water from the old well prior to the time of the blasting was good, clear, freestone water, and

that there was an abundant supply. Mrs. E. V. Roberts testified to the same effect. Both of these witnesses were near neighbors of the McCollums, and their testimony was based upon their own personal knowledge of the well. Each of them also testified as to the poor quality of the water taken from the new well which had been drilled to take the place of the old well.

The new well which Leon Bryant drilled for the appellee cost approximately $175. The appellee testified that the value of his land had been reduced at least $500 because of the destruction of the old well; and the appellee also claimed damages for the loss of time and labor expended by the appellee in carrying water from a neighboring well to appellee's home during the several months which elapsed before the new well was provided.

The jury after considering the testimony of the witnesses returned a verdict for the appellee for the sum of $500, and judgment was rendered by the court for that amount.

The appellant in the brief filed by appellant's attorneys contend that the judgment should be reversed for the reasons that there was no trespass and no negligence on the part of the appellant and that the proof was insufficient to show that the seismographic explosions were the proximate cause of the ruined condition of appellee's well.

The appellant claimed that its entry upon the appellee's land for the purpose of making the seismographic tests was with the appellee's permission, and that appellant in entering upon the land for the purpose of making such tests was not a trespasser but a bona fide licensee. This contention was stated in appellant's motion to exclude the testimony offered by the plaintiff, appellee herein, and for a directed verdict on the ground that ''the proof affirmatively shows that the plaintiff was advised of the proposed entry upon his land for the purpose of geophysical operations, . . . and that the plaintiff knew that the explosives would be used under the surface of the earth for such purposes, and that the plaintiff

made no objection to such operations, but in fact pointed out the route and manner of entry upon his premises to get to the points indicated where the explorations would be conducted, and that such conduct on the part of the plaintiff amounted to a consent to go upon his land for such purposes, . . .."

W. H. (Bill) Franz, who was appellant's agent charged with the duty of obtaining permits for appellant to enter upon lands and make exploratory tests, testified that before permitting the crew of workmen engaged in making the tests to go upon appellee's land he approached appellee in his corn field and asked permission to do the geophysical work on the land and explained to appellee how and where he wanted to work, and that appellee told him that it would be all right, but that he did not want appellant's crew to drive their trucks across his field.

The appellee denied that he gave the appellant's agents and employees permission to enter upon the land and make the exploratory tests which resulted in the damage to the well. The appellee testified that when the appellant's agent came upon him in the field, where he and his son were planting corn, and asked permission to make a test, the appellee told him that the land had been leased for mineral exploration prior to the time appellee purchased the land and that he (appellee) didn't have any right to give him permission to make the test; and the appellee testified that he did not give the appellant's agent authority to make the test. Travis McCollum, the 17-year old son of the appellee, who was in the field with his father at the time the appellant's agent approached the appellee for the purpose of getting permission to go upon the land, testified that his father not only did not give the appellant's agent permission to go upon the land, but told him not to go upon the land.

In view of the conflicts in the statements of the witnesses and the unsatisfactory nature of the testimony on this point the court was amply justified in submitting to the jury the question whether or not the appellant had

obtained permission from the appellee to enter upon appellee's land for the purpose of conducting seismographic exploratory tests. The question whether or not appellee had granted permission to the appellant to enter upon the land, and if so, for what purpose, and the question whether, if such permission had been granted, appellant exceeded its rights as a licensee after entering upon the land and thereby became a trespasser ab initio, were questions to be determined by the jury; and we think that appellant's request for a directed verdict on the grounds stated above was properly refused.

The other point relied upon by the appellant in the brief filed by its attorneys is that the proof shows that there was no negligence on the part of the appellant in conducting its seismographic operations, and that the proof is insufficient to show that the damage to appellee's well was proximately caused by the explosions complained of; and appellant cites in support of this contention the case of Humble Oil & Refining Company v. Pittman, Miss., 49 So. (2d) 408. But, as stated in the opinion rendered in that case, each case of this type must be adjudged upon its own facts; and the decision in the Pittman case was based upon the special facts set forth in that opinion. In the Pittman case three charges were fired by the appellant. Two of the charges were made with 2 pounds of dynamite at a depth of 65 feet, and one charge was made with 2½ pounds of dynamite at a depth of 40 feet. In the case that we now have before us 20-pound charges of dynamite were used. In the Pittman case the witness Staples, who bored the well, was unwilling to state that the damage to the well was caused by the explosion of the dynamite charges mentioned above. In the case that we now have before us Leon Bryant, who drilled the new well for Scott McCollum, stated that it was his opinion that the concussion caused by the explosion of the 20-pound charge of dynamite caused the well curbing in the old well to give way. In the Pittman case experienced drillers of water wells

testified that water in ample quantity and of usable quality was still available in Pittman's well, but that the well was too deep for the size of the pump, and another expert's view was that the cause of the stoppage was the faulty pump and strainer. These facts were pointed out in the opinion in the Pittman case to show a lack of causal connection between the explosion and the damaged condition of the well, and to distinguish that case from the case of General Geophysical Company v. Brown, 205 Miss. 189, 38 So. (2d) 703.

In the case that we now have before us we think there was sufficient evidence to justify the jury in finding that the dynamite explosion was the proximate cause of the damage to appellee's well.

The appellee in making out his case in chief introduced several witnesses who testified to the violence of the dynamite explosions and the vibrations resulting from the explosions. The vibrations were felt for a distance of a quarter of a mile or more. The explosion of the 20 pounds of dynamite caused a part of the pipe to be blown into the air, along with the mud and water. The appellee testified that immediately after the explosion the water in the well which he was then using appeared to be "stirred up" and became muddy and unfit for use. Mrs. McCollum testified that she noticed the changed condition of the well "in a day or two—right away." Travis McCollum testified that the water in the well was muddy, that the flow of water into the well was greatly diminished, and that water had to be obtained elsewhere to supply the needs of the family.

The appellee also introduced three experienced welldrillers who had had experience in drilling wells in the Mize area and in areas where such geophysical tests and seismographic operations had been carried on; and these witnesses testified that dynamite explosions of the kind testified to by the witnesses in this case are likely to cause water in nearby wells to take on a milky appearance and in some instances become muddy with sand, and that

when a new well is drilled in an area where such explosions have occurred, it is often necessary that the well be drilled to a greater depth than that required before the blasting operations took place. Such was the testimony of Robert Allen, who had had 15 years' experience in drilling wells, and Olin Austin, who had had 17 years' experience in boring wells.

 Frederick Mellen, a qualified geologist, testified for the appellant that the size of the charge used in the blasting on McCollum's land could not have caused any damage to McCollum's well; and R. C. Brown, who qualified as an explosive expert, testified that the explosion of a 20-pound charge of dynamite would not have any effect whatever on a well located 350 yards away. The expert testimony of these witnesses was entitled to careful consideration by the jury, but their testimony was to be considered along with the testimony of the other witnesses. And where there is a conflict in the evidence as there was in this case the jury should be left to decide the issue. This case is governed by the principles laid down by this Court in the case of General Geophysical Company v. Brown, supra.

The judgment of the circuit court is therefore affirmed.
Affirmed.