BROADHEAD, et al. *v.* GATLIN

No. 42110 February 19, 1962 137 So. 2d 909

*Oates & Oates,* Bay Springs; *Daniel, Coker & Horton,* Jackson, for appellants.

*McFarland & McFarland,* Bay Springs, for appellee.

ARRINGTON, J.

The appellee, Webber Gatlin, plaintiff below, sued Sam Broadhead and Jack Stack, Jr., in the Circuit Court of the First Judicial District of Jasper County for damages. There was a verdict and judgment entered for appellee in the amount of $3,000, from which judgment the appellants appeal.

The declaration alleged that the appellee was the owner of certain lands in Jasper County; that during the months of August and September 1960 the appellants drilled a well in search of oil on land adjacent to appellee's land; that they constructed a large slush pit which contained chemicals and refuse from the drilling operation; that on October 8, 1960, the slush pit dam, because of negligent construction, broke and all the contents, which were in liquid form, drained onto the appellee's lands. As a result thereof, he lost a two-acre pond and all the fish therein, five head of cattle, and ten acres of his pasture land were completely ruined for grazing purposes.

The defendants answered and admitted they dug or caused to be dug a slush pit into which was dumped waste oil and other matters and admitted that on or about October 8, 1960, the dam of said pit broke, but they denied they were guilty of any negligence. The defendants admitted that plaintiff had on his land a pond and that some waste from their slush pit drained into it; that said refuse spread over a small area of plaintiff's land but denied that it spread over approximately ten acres, and denied that said land has been ruined for grazing or any other purposes; denied that any cattle be-

longing to the plaintiff died as a result of the escape of said refuse, and denied that the plaintiff has suffered any harm or damages as a result of any negligence on the part of defendants.

Jack Stack, Jr., one of the appellants, called as an adverse witness, testified as to the construction of the slush pit. He testified that the pit was dug into the side of a hill and the dirt that was excavated was used on the lower side to build a dam; that the size of the pit was about 3/4 of an acre; that the dam was ten or twelve feet high and probably twenty or thirty feet wide at the base. He admitted that chemicals were used in the drilling process, this being left up to the mud engineer.

The appellee testified that the refuse drained into his pond, killing the fish, and the pond being unable to hold the waste, overflowed and spread onto his pasture lands, destroying such lands permanently for grazing purposes; that he was using this land, which included the pond, for cattle; that he saw five of his cows drink from the pond and they died within approximately three weeks; the first one died the first week; another died during the second week; and the three remaining ones were put up so they could be properly cared for, but they died the third week.

After the appellee rested his case, the appellants made a motion to exclude the evidence and for a directed verdict, which was overruled. They then put on evidence showing that 4800 pounds of caustic soda and other chemicals and substances were used in the solution which passed from the slush pit onto plaintiff's pond and spread over his land.

Marion Harris, witness for the defendants and who was experienced in the use and content of these chemicals, testified that caustic soda is "red devil lye" and is a potential poison; that he could tell when the contents reach the danger point; that he had tested the content about three times a week during the drilling of

the well but had not seen or tested it after the last day of drilling, which was the latter part of September 1960. At that time it was not poisonous. He did not see the slush pit again until Tuesday before the trial, which was February 13, 1961, at which time the test showed that the residue then remaining in the pit was not poisonous. The dam did not break until October 8; there is no showing as to the condition of the contents between the last day of the drilling, weeks before, and October 8th at the time of the break. From his testimony at least, caustic soda was a potential poison and the evidence shows that the fish in the pond began dying immediately after the refuse from the pit flowed into the pond following the break of the dam. Under such circumstances, the jury was warranted in finding that the contents of the pit were poisonous to fish. That fish were poisoned and died is supported by the testimony of Jack Stack, one of the appellants, who visited the premises after the break, and saw the dead fish.

 █ The appellants argue that the court erred in overruling appellants' motion to exclude the evidence and for a directed verdict when the appellee rested his case. It is well settled under the decisions of this Court that by the introduction of evidence after the overruling of their motion to exclude and for a directed verdict appellants waived any error which may have been committed in denying the request. Illinois Central Railroad Company v. Perkins, 223 Miss. 891, 79 So. 2d 459, and authorities there cited. Nebhan v. Mansour, et al., 162 Miss. 418, 139 So. 166.

 █ The appellant also contends that the court erred in not granting the requested peremptory instruction. The defendants were not entitled to a peremptory instruction. Clearly, the appellants were guilty of negligence in leaving the slush pit with the potential poisons therein. They could reasonably foresee that the dam might break with such consequences as have been shown

to result. Unquestionably, some damages resulted. The fish were killed, and the pond and 10 acres of land damaged. The appellee testified that he saw several of his cows drink from the pond after the slush pit had broken and they were made sick immediately. Of course, the burden of proof is on the plaintiff to show that the death of the cattle resulted from the drinking of the poison liquid.

■■ The appellant next contends that the appellee failed to prove that he has sustained damage to his land and that the jury was not properly instructed as to the measure of damages for permanent injuries to real property. We think this contention is well taken. In 15 Am. Jur., Damages, Section 109, it is said:

"In case of any injury of a permanent nature to real property the proper measure of damages is the diminution in the market value of the property by reason of that injury, or in other words, the difference between the value of the land before the injury and its value after the injury. . . . . . Permanency of injury is the proper test for the application of this rule; and, therefore, it is obvious that to warrant its application the act complained of must take a part of, or effect a lasting change in, the realty itself."

The appellee requested only one instruction as to damages, which is as follows: "The court instructs the jury for the Plaintiff, that if you find for the Plaintiff you should return a verdict for one sum but to include adequate compensation for all damages, if any, sustained by the plaintiff."

Under this instruction the jury was not furnished with any guide as to the correct measurement of damages as to the land. Alabama Great Southern R.R. Co. v. Broach, 238 Miss. 618, 119 So. 2d 923.

■■ Lastly, the appellants argue that the court erred in allowing appellee to prove over objections elements of damage not alleged in the declaration. The appellee

testified that because of the negligence of appellants he was forced to sell his cattle at a financial loss. This was not alleged in the declaration, and, therefore, it was error to admit this evidence, as there was no amendment to the declaration.

For the reasons stated, the judgment is affirmed as to liability and reversed on the question of damages, and remanded for a new trial on the issue of damages only.

Affirmed as to liability; reversed and remanded for a new trial on the issue of damages only.

*Lee, P. J.,* and *McElroy, Rodgers* and *Jones, JJ.,* concur.