CENTRAL OIL COMPANY *v.* SHOWS

No. 42518          January 21, 1963          149 So. 2d 306

*Welch, Gibbes & Graves,* Laurel, for appellant.

*Tom Alexander,* Mendenhall, for appellee.

Rodgers, J.

This is a damage suit brought by the owner of certain lands against appellant, Central Oil Company, owner of the oil and mineral rights in the land, for injuries to the surface as the result of an alleged negligent oil drilling operation conducted by the Central Oil Company upon the aforementioned land.

The case was tried in the Circuit Court of Simpson County, Mississippi. The jury returned a verdict in favor of appellee, A. H. Shows, in the sum of $2,500. The trial court overruled a motion for a judgment, notwithstanding the verdict, and also a motion for a new trial; whereupon, appellant perfected his appeal to this Court.

The facts on which appellee based his claim in the lower court are as follows: A. H. Shows became the owner of the Southeast Quarter (SE¼) of the Southeast Quarter (SE¼) of Section 17, Township 2 North, Range 5 East, by a deed from his wife. His wife had obtained the land as an heir of the estate of her father, C. D. Jennings, and by a deed from her sister and brother, conveying to Mrs. Shows their interest in the land. Written in the deed was the following: " "* * * less such minerals as have heretofore been sold or reserved

by former owners." C. D. Jennings obtained the land by deed from George S. Gardner, et al., and this deed reserved "The oil, coal and all other mineral rights, together with the right and privilege to remove same * * *". Appellant had obtained its title to "all the oil, gas and mineral rights" on the land here involved from the successors in title of George S. Gardner, et al., by quitclaim deed which included the "right of ingress and egress, over, through and across said land * * * open roads * * * and any or all other rights that may be necessary * * * for the purpose of * * * extracting oil, gas and other minerals that may be located thereon * * *".

In November 1961, the agents of appellant moved upon the land here in question and proceeded to drill for oil. Appellee requested appellant to drill at a different location across the public road but appellant refused and proceeded to build a gravel road to the site selected for drilling. They leveled the ground for a "turn-around" and dug two pits in the ground, said to be about the size of a small stock pound, or "as big as this courtroom." The pits were located on the lower side of the well site. The largest of these two pits was known as the "slush pit." Caustic soda and other material used in drilling the well were dumped into this pit. Appellant used about thirty-eight loads of gravel upon the road and the well site. Appellant had breached several terrace rows in the construction of the road. After the drilling operation was over, and the machinery had been removed, appellant had a fence replaced, the road smoothed out, and one of the pits refilled with soil.

Appellant has assigned five grounds of error alleged to have been committed by the trial court, but we feel it is necessary to discuss only two of these assignments of error: (1) Appellant alleges it is entitled to a judgment in this Court because appellee failed to prove that it was negligent in any manner so as to cause injury

to the property of appellee; that there was no evidence introduced to prove that appellant used more land than was reasonably necessary for its use to explore for oil by drilling. (2) Appellant is entitled to a judgment here because appellee failed to prove any legally recoverable damages.

The testimony shows that there is a public road running through the property of appellee in a southeasterly direction beginning at the northwest corner, and that appellant constructed the gravel road, above-mentioned, a distance of about two hundred feet from the public road, in a southwesterly direction, to the well drilling location. When appellant abandoned the property, it left the gravel on the road and smoothed the road to level it with the adjacent land, so that the gravel was mixed with the soil. The terrace rows were not rebuilt by appellant. The slushpit was not refilled, and remained open, containing caustic soda and liquid refuse used in drilling the oil well. Appellee testified as to the contents of the slushpit in the following language: "It was drilling mud they put in it, and it was caustic soda they put in it. * * * chemicals they had put in the drilling." The evidence shows that appellant abandoned the well site on Christmas Eve, and the following January 9th, a game warden went to the oil well location and found that the dam to the slushpit had been breached. He said "It broke and run down. * * * Q. Do you know how long before you went out there it broke or have you any way of knowing? A. I don't know exactly, it hadn't been but a few days didn't look like. It looked like the rain broke it. * * * Q. Could you tell whether or not rainwater had run off the top of the pit or what had run off? A. Well, I couldn't tell. I know it had rained out there a day or two before, it come a big rain. I don't know whether the rain had broke the pit or whether it had washed a little path — the water washed the pit and started the water run-

ning out a strip I would say 17 or 18 inches wide where it ran down the hill." The testimony shows that the liquid from the slushpit made a brown path where it ran down the hill to the south boundary of the property alleged in the declaration to have been damaged. The proof showed that the distance from the pond to the boundary line was sixty-eight and one-half feet, although it also ran for some distance upon the property not involved in this action.

## I.

Appellee asserts that he was damaged because of the negligence of appellant, (1) in permitting the caustic soda left in the slushpit to escape; (2) in leaving gravel used in building a road to the drilling location on the land and in mixing this gravel with the soil; and (3) in not replacing terrace rows cut during the use of the land by it in the drilling operation.

There is no charge in appellee's declaration, and there is no proof to show, that appellant used more land than was reasonably necessary for use in its drilling operation on the property involved in this action. This suit is therefore not based upon the use of an unreasonable amount of land; nor is it based upon the unreasonable use or destruction of timber, crops, fences, ponds and structures, located outside the area actually necessary for proper drilling operation. The suit, then, is an action for the negligent use of the soil surface within the perimeter of the land space reasonably required for proper oil drilling, and in addition thereto, as stated in appellee's declaration "because of the negligence of the defendant, and his leaving a slushpit such as to waste over the adjoining land of the well location."

Appellee is the owner of the land surface and all rights in said land except rights reserved by his predecessor in title. Appellant is the owner of all minerals located on the property, and has the contractual right,

as set out in his deed, to go upon the land "at any and all times for the purpose (among others) * * * of drilling for oil * * * and to run pipelines, open roads, build railroads or tank lines and any and all other rights that may be necessary or expedient for the purpose * * * of extracting oil * * * on said land * * * with the right to remove any and all gas and oil * * * and any and all machinery or other property that may be placed upon said land * * *".

In the case now before the Court, appellant is not a lessee with the ordinary right to enter the land and extract oil therefrom, but is the owner of the mineral by virtue of a deed.

(Hn 1) The landowner may make a separate convey-ance of his interest in any minerals that may lie beneath the surface and may establish a separate mineral estate in the land. See 36 Am. Jur., Mines and Minerals, Sec. 24, p. 297, and Sec. 33; 24 Am. Jur., Gas and Oil, Sec. 28, p. 537.

This textwriter has also pointed out that "the owner of the surface of the land and the owner of the minerals when they are severed from the surface estate have separate and distinct titles. With the ownership of these separate estates go rights of use and enjoyment which are in a sense relative and which could be exercised by each owner with due regard to the rights of the other owner. So far as it is possible, these respective rights should be adjusted to each other, so as to conduce to the full enjoyment of the property. The surface owner may use and deal with his property in any legitimate manner not inconsistent with the rights acquired by the owner of the minerals; and as will be seen, the owner of the minerals has a limited right to use the surface in reaching and removing the minerals." 36 Am. Jur., Mines and Minerals, Sec. 174, p. 400.

(Hn 2) This Court stated in the case of Gulf Refining Company v. Davis, 224 Miss. 464, 80 So. 2d 467, quoting

from 58 C. J. S., Mines and Minerals, Sec. 159 b., p. 332, that "A grant or reservation of mines or minerals gives to the mineral owner the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploiting, mining, removing, and marketing the minerals." See also 24 Am. Jur., Gas and Oil, Sec. 28, p. 537.

In the case of Westmoreland, et al. v. California Company, 240 Miss. 562, 128 So. 2d 113, we said "* * * drilling may be done anywhere on the land, within the limitations of the lease * * *".

In the case of Union Producing Company, et al. v. Pittman, 245 Miss. 427, 146 So. 2d 553 (Decision rendered November 19, 1962), this Court held that a lessee had the right to use as much of the land surface as was reasonably necessary to carry out his right to explore for and extract oil from the land on which it had a lease. See American Sand and Gravel Company v. Rushing, 183 Miss. 496, 184 So. 60.

(Hn 3) In the case now before the Court, we are of the opinion that appellee, A. H. Shows, had no cause of action against appellant, Central Oil Company, for the use of the land reasonably necessary for the purpose of drilling for oil. Appellant is the owner of the minerals and, as such, had the right to use as much of the surface as was reasonably necessary to extract and acquire the oil beneath the surface. In exercising its right to obtain the minerals, appellant was not liable to appellee-landowner for failing to rebuild a terrace row, smoothed out during its drilling operation, nor for damages caused to the surface of the land as the result of leaving the gravel and mud mixed with the topsoil, within the perimeter of the area shown to have been reasonably necessary for its operation. (Hn 4) We are also of the opinion that appellant had the right to dig pits and erect dams within the area reasonably necessary to conduct its drilling operations. See 36 Am. Jur., Mines and Minerals,

Sec. 182, p. 404. The question of liability as the result of escaping chemicals from the slushpit will be discussed later.

## II.

(Hn 5) Appellant contends that it is entitled to a judgment here because appellee failed to prove any legally recoverable damages. The grounds for recovery set out in the declaration filed by appellee, seeking damages growing out of the alleged escape of chemicals from the slushpit left upon the land, is not clear. The declaration alleges that "Plaintiff would further show that the Defendant left a slushpit, consisting of oil, gas and chemicals, and that said slushpit broke and ran over an area of approximately one-fourth of a mile of the above-described land. Plaintiff would further show that there will be permanent damage to his land, other than the location where the well was situated, because of the negligence of Defendant, and his leaving a slushpit such as this to waste over the adjoining lands of the well location."

The question then arises, was the action based upon negligence in construction and maintenance of the slushpit, or based upon the creation of a nuisance by appellant to the damage of appellee? Appellant's answer to the declaration denied that "* * * it left slushpit to waste over the adjoining lands of the well location." Appellant made a motion for a directed verdict when appellee rested his case, upon the ground, among others, that no proof was introduced showing that defendant had done any negligent act to cause the alleged injury to appellee. The trial court overruled this motion, apparently upon the ground that the declaration charged the defendant with having created a nuisance, since there is no testimony in the record showing that the slushpit was negligently constructed. See 58 C. J. S., Mines and Minerals, Sec. 274 (2)(b), p. 800.

. It is stated in 39 Am. Jur., Nuisances, Sec. 142, p. 404, that "The declaration or complaint in an action for damages for a nuisance must allege facts sufficient to state a cause of action in conformity to the general rules of pleading. It must show the existence of a nuisance, but it is not necessary to use the word 'nuisance' of the facts alleged disclose a nuisance. * * *

"The rules governing the sufficiency of complainants in actions for negligence do not apply. Ordinarily, it is not necessary to allege negligence on the part of the defendant, and even though it is alleged it need not be proved * * *

"If the nuisance charged is private in character, the plaintiff need not allege special damage, but a general claim for damages will sustain a recovery of such actual damages as are the natural and proximate consequence of the wrong. * * *''

In the case of Broadhead, et al. v. Gatlin, 137 So. 2d 909 · (Miss.), this Court had before it the question with reference to an open slushpit, and the Court said "The defendants were not entitled to a peremptory instruction. Clearly, the appellants were guilty of negligence in leaving the slushpit with the potential poisons therein. · They could reasonably foresee that the dam might break with such consequences as have been shown to result.''

We are of the opinion that the pleading was sufficient to charge the creation of a nuisance by appellant, in leaving an open slushpit filled with poisonous chemicals likely to cause recurring continuing damage to the property of appellee. ·

What then is the damage to appellees growing out of the alleged nuisance? In 39 Am. Jur., Nuisance, Sec. 143, p. 405, the textwriter points out that "Where a thing complained of is not a nuisance per se, the burden is upon the complaining party to show that it is a nuisance in fact, and this must be shown by proper evidence.

The plaintiff must also show the consequent damage to him. The mere occurrence of an accident is no evidence of nuisance. And since nuisance is an indirect tort, there is no presumption of damage from its maintenance.''

Plaintiff testified that the slushpit broke and ran about a quarter of a mile across his land but he stated that he had not sued appellant for damages to any land except the forty acres where the well was located. Testimony showed that this slush ran across the land involved for an additional distance of sixty-eight and one-half feet to the property line of the forty acres involved in the suit. Testimony also showed that there had been a heavy rain, and for some unknown reason the water had run through a place in the dam and out a strip seventeen or eighteen inches wide, where it ran down the hill making a black path, but there is no testimony of any damages to any of the land or timber caused by the escaping liquid from the slushpit. The only evidence introduced in the record with reference to damage is the testimony of Mr. G. C. Baldwin, a bulldozer operator. He testified that it would require sixteen or eighteen hours of work with a bulldozer to fill up the slushpit, and that it would cost $14 per hour to have the work done.

(Hn 6) We are of the opinion that the owner of the minerals was not required to refill the slushpit, necessarily constructed during the drilling operation. It is liable only for such damages as it may have caused others as the result of leaving the open slushpit upon the property.

(Hn 7) We are also of the opinion that appellant is correct in its contention that there was no evidence introduced to show that it was negligent in the use of the property within the perimeter of the well site. (Hn 8) Moreover, there is no testimony in the record to show damages actually caused because of the overflowing of the slushpit. It is obvious that there was a slight

312

temporary damage to the land as a result of chemicals escaping but appellee was entitled to recover only nominal damages. The judgment of the trial court will therefore be reversed and judgment entered here in favor of appellee for nominal damages in the sum of $50. See City of Laurel, Mississippi v. Bush, et ux., 238 Miss. 718, 120 So. 2d 149.

Reversed and judgment entered here for appellee.

*Lee, P. J., McGehee, C. J., and McElroy and Jones, JJ.,* concur.