241 So.2d 629 (1970)
W.W. (Bill) BYNUM
v.
MANDREL INDUSTRIES, INC.
No. 45932.
Supreme Court of Mississippi.
November 2, 1970.
Rehearing Denied December 21, 1970.
*630 Melvin, Melvin & Melvin, Laurel, for appellant.
M.M. Roberts, S. Wayne Easterling, Hattiesburg, for appellee.
RODGERS, Justice.
This case came to this Court from the First Circuit Court, District of Jones County, Mississippi, on an appeal from a judgment entered by the trial judge in favor of Mandrel Industries, Inc., after a jury had returned a verdict in favor of the appellant, *631 W.W. (Bill) Bynum against Mandrel Industries, Inc., in the sum of $8,000.
The claim for damages against appellee arose under the following circumstances. The appellant, Bynum, is the owner of a certain 120-acre tract of land used as a homestead and which is located in Jones County, Mississippi. Appellant is engaged in farming and raising cattle. He has developed the farm by improving his pastures and by digging ponds to supply water for the cattle.
In July 1967 a seismograph crew approached the appellant and requested the right to drill and explode charges on the land of appellant. Mr. A.C. Baylor represented himself to be permit agent for Mandrel Industries, Inc., and agreed upon a price of $15 per hole, which was later paid by Mandrel Industries, Inc.
The seismograph crew went upon appellant's land and made six "shots." That is to say, they drilled six holes and set off explosives in the holes. One of these holes was made one hundred feet from the dam to one of the ponds on the appellant's pasture. The appellant went to the pond immediately after the explosion and discovered that the water in the pond was muddy and that water was bubbling and running out of the hole where the "shot" had been made near the dam. The seismograph crew attempted to plug the hole with cement, but to no avail. Later, a Mr. Baylor came to the appellant's home, driving an automobile which had Mandrel Industries, Inc., advertisement painted on the automobile, and thereafter, an attempt was made by the seismograph crew to put well drilling mud in the pond. This activity did not cause the pond to refill.
Pictures were introduced in evidence which leaves little room to doubt that the high water mark was much above the little pool of water left in the pond.
The defendant, Mandrel Industries, Inc., denied all the allegations in the declaration in which the appellant charged that the seismograph crew acted for, and as agents of, the defendant, Mandrel Industries, Inc. The appellant offered evidence in this record to show that (1) the name of Mandrel Industries, Inc., was printed on the side of the automobile and trucks operated by the seismograph crew; (2) the parties who contracted to do seismograph work on the appellant's property gave appellant the name and address of the defendant industry; (3) he was paid by Mandrel Industries, Inc.
Mandrel Industries, Inc., and Ray Geophysical Company tried to remedy the damages to the pond by returning to the pond to put cement plugs in the hole six to nine months later and to put chemical mud in the pond to fill the hole.
It is true that agency cannot be proven by statements of an alleged agent not made on the witness stand. City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962); Fanning v. C.I.T. Corporation, 187 Miss. 45, 192 So. 41 (1939); M. & V. RR. Co. v. Cocke, 64 Miss. 713, 2 So. 495 (1887); 3 Am.Jur.2d Agency § 354 (1962); 3 C.J.S. Agency § 322c (1936). On the other hand, it is equally well settled that the relationship of agency may be shown by circumstantial evidence. Powell v. Masonite Corporation, 214 So.2d 469 (Miss. 1968); Hobbs v. International Paper Company, 203 So.2d 488 (Miss. 1967), and authorities cited; 3 Am.Jur.2d Agency § 351 (1962).
It has been said:
Even though it is not full and satisfactory, or is only remotely relevant, any competent evidence which has a tendency to prove or disprove agency is admissible for that purpose, regardless of whether it is oral or written or is direct, indirect, or circumstantial. * * * (3 C.J.S. Agency § 322a, p. 273)
In the case of Merchants Co. v. Tracy, 175 Miss. 49, 166 So. 340 (1936), this Court held that "a big M in a circle painted on the side of the truck," coupled with evidence *632 that defendant's truck with a similar emblem painted on the side was seen within a mile of the accident, was sufficient to make a jury issue as to the ownership of the truck and the relationship of master and servant, although such relationship was denied by the defendant truck owner.
The testimony in the record here with reference to the issue of agency not only shows that the trucks and automobile used by the seismograph crew had a big M painted on the sides of the vehicles, similar to the emblem on the card given to the land owner by the alleged permit agent, but that in accordance with the contract with the seismograph crew, Mandrel Industries, Inc., paid for the right to "shoot" the property by its check.
We are of the opinion that the appellant overwhelmingly established the agency relationship between the seismograph crew and the defendant. Moreover, there is no testimony offered to the contrary.
The appellee contends that, even if the relationship of agency were sufficiently shown, the appellant could not recover a judgment because (1) there was no negligence shown on the part of the seismograph crew which caused damage to the appellant; (2) there is no proper proof of damages, and for that reason the order of the trial court in granting judgment notwithstanding the verdict should be affirmed. We do not agree with appellee's conclusions.
It is true that ordinarily suits of this nature must be predicated upon the negligence of the seismograph crew. Placid Oil Company v. Byrd, 217 So.2d 17 (Miss. 1969). In the instant case, however, the record shows on the issue of negligence that the land owner, at the time he contracted with the agent of the appellee, told him that he did not want the seismograph crew to "go about my pond or in my permanent pasture. That's the only way I would let them go in there was not to go about my pond or shoot a hole in my permanent pasture." The record also shows that the agent, Baylor, said: "I won't unless I am forced to and if I am forced to what damage we do we will pay for it." This evidence was not contradicted; it stands as a part of the limited access contract on which the appellee was permitted to go upon the land, if believed by the jury. However, notwithstanding the entreaty of the land owner, and in callous disregard of his land rights, the agents of appellee set off a charge of explosives within one hundred feet of the dam to appellant's pond. The explosion was so powerful that it jarred the ground and blew mud to the top of the trees and shook the window panes in the appellant's home three-quarters of a mile away.
In the instant case, however, it is not necessary to have proven negligence under the facts here shown because the uncontradicted testimony shows that the defendant had a limited permission to "shoot holes" in his land for geophysical exploration. This agreement was violated and the defendant was a trespasser when it exploded dynamite near his pond. See Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965); Magnolia Petroleum Co. v. McCollum, 211 Miss. 166, 51 So.2d 217 (1951); General Geophysical Co. v. Brown, 205 Miss. 189, 38 So.2d 703 (1949).
In order to prove the causal connection between the explosion and the injury to plaintiff's land and spring the appellant offered a witness, Mr. Joe Parker, who built the pond here involved. This witness had often used dynamite in destroying ponds (the "hard pan"), to sink water and to cause the bed of streams to sink. He would have testified that in his opinion the exploding of dynamite in the deep hole below the dam where he observed the hole would have "bust it." The testimony of this witness was erroneously excluded upon the ground that he was not an expert.
In the case of Magnolia Petroleum Co. v. McCollum, 211 Miss. 166, 51 So.2d 217 *633 (1951), this Court pointed out that the land owner introduced three experienced well drillers who testified that dynamite explosions of the kind testified to by the witnesses in that case were likely to cause water in nearby wells to take on a milky appearance and get muddy with sand. However, no objection was made to this evidence.
It has long been accepted as a general rule of evidence that the opinion testimony of one who has acquired special knowledge of a subject, either by study, training or practical experience, may impart to the jury such acquired knowledge so as to aid them in determining an issue with which the jury is not familiar. 20 Am.Jur. Evidence § 783, p. 656 (1939); 31 Am.Jur.2d Expert and Opinion Evidence § 26, p. 523 (1967).
We said in Glens Falls Insurance Co. v. Linwood Elevator, 241 Miss. 400, 130 So.2d 262 (1961):
* * * [A] witness need not be in-fallible or possess the highest degree of skill to testify as an expert. It is generally sufficient that the witness possess knowledge peculiar to the matter involved, not likely to be possessed by ordinary laymen. * * * (241 Miss. at 417, 130 So.2d at 268)
It is true that the qualification of an expert witness is addressed to the judicial discretion of the trial judge; Saucier v. Talkington, 251 Miss. 519, 170 So.2d 434 (1965); 31 Am.Jur.2d Expert and Opinion Evidence § 31, p. 530 (1967); but, even if the testimony of the expert witness had been properly excluded, there is sufficient evidence to submit to the jury the issue as to whether or not the explosion of dynamite below the dam caused the water in the pond to run out. The evidence shows that immediately after the explosion the water was running out of the hole where the explosion occurred; the water in the pond was muddy; the next morning the water level in the pond had fallen appreciably; fish were dead in the pond and the spring went dry. Thereafter, the seismograph crew tried to stop the flow of the water below the dam by plugging the hole, and when this failed, they put oil drilling mud in the pond in an effort to stop the leak. All of this is in addition to the rejected testimony indicating an admission by the agents of appellee that they had damaged appellant's pond.
The testimony in this case is entirely different from the cases which hold that negligence was not shown and that "post hoc ergo propter hoc" (after this consequently by reason of this) is not sound as proof of negligence. See Western Geophysical Co. of America v. Martin, 253 Miss. 14, 174 So.2d 706 (1965); Humble Oil & Refining Co. v. Pittman, 210 Miss. 314, 49 So.2d 408 (1950); Kramer Service v. Wilkins, 184 Miss. 483, 186 So. 625 (1939). We are of the opinion that the evidence introduced presented an issue as to whether or not the explosion caused the pond and spring to go dry for the determination of the jury.
The appellee insists, however, that, in any event, the appellant did not show any monetary damages and could never be entitled to more than nominal damages. He cites Central Oil Company v. Shows, 246 Miss. 300, 149 So.2d 306 (1963). Shows is not applicable to the facts here because in Shows no effort was made to show any monetary damage to the land owner, whereas, in the instant case the appellant offered evidence to show the difference between the value of his forty acres where the pond is located before the damage to his pond and the value of the forty acres after the damage to the pond. Appellant offered evidence to show that a pond of like size could be constructed for $350 to $400. The appellant based his proof of damages upon the theory of permanent injury to his farm while appellee based its rebuttal proof of damages upon the theory of temporary damages to real property.
*634 In the case of Chevron Oil Company v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965), we had this to say with reference to the method of proving damages to real estate:
As a general rule the measure of damages in actions for permanent injury to land where there is no willful trespass is the difference in value in the before-and-after damage to the premises. We have called attention to this rule repeatedly. Waggener v. Leggett, 246 Miss. 505, 150 So.2d 529 (1963); Union Producing Co. v. Pittman, 245 Miss. 427, 146 So.2d 553 (1962). See also 87 C.J.S. Trespass § 117 (1954). It is also true that where the land, or buildings located on the property, has been damaged but the property may be restored to its former condition at a cost less than the value determined by the diminution of the value of the land, the cost of restoration of the property, plus compensation for the loss of its use, may be the measure of damages. Mississippi Power Co. v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963); Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So.2d 689 (1963); Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962); Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So.2d 645, sugg. of error 114 So.2d 667 (1959); Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So.2d 250 (1945); Yorkshire Ins. Co. v. Brewer, 175 Miss. 538, 166 So. 361 (1936); Bowyer & Johnson Const. Co. v. White, 5 Cir., 255 F.2d 482 (1958). This rule, however, is usually confined to the introduction of evidence to show a reduction, and not an increase, of damages above the diminution in value of the land resulting from the injury. * * * (253 Miss. at 364, 175 So.2d at 474)
We said in Sun Oil Company v. Nunnery, 251 Miss. 631, 170 So.2d 24 (1964), if the damage to the land is permanent, the measure thereof is usually the difference between the fair market value of the entire tract before the injury and the fair market value after the injury. Citing Baker v. Miss. State Highway Commission, 204 Miss. 166, 37 So.2d 169 (1948).
One textwriter has this to say on this subject:
Where recovery is sought for permanent injuries to property, evidence of the value of the property before and after the injury is admissible, for such value is the criterion for measuring the damages for such an injury. There is, however, a difference of opinion upon the rule of damages for temporary injuries to real property. Most courts take the view that the measure of damages for temporary injuries is the cost of repairing the damage or restoring the property to its original condition. Where this view prevails, evidence of the difference between the value of real property before and after a temporary injury is not admissible. (22 Am.Jur.2d Damages § 326, p. 427)
Another textwriter has this to say on this subject:
The general rule is that the difference between the fair or market value of the property immediately before and immediately after the injury will be taken as the measure of damages, at least where the injury is permanent, or where the damage cannot be well expressed in specific items of injury, although it affects in a substantial degree the value of the entire property as a unit. This rule, which has become known as the "before and after rule," is not a hard and fast or inflexible rule applicable under all circumstances, and it will not apply where there is a more definite, equitable, and accurate way by which the damages may be determined. Where the thing which is destroyed or injured, although a part of, or attached to, the realty, has a distinct value without reference to the realty on which it stands or from which it grows, the recovery is for the value or depreciation of value of the thing destroyed or injured, and not for the *635 difference in the value of the land before and after the destruction; the recovery may be the value of the thing destroyed or the cost of its repair.
Damages arising from temporary injury to land may be measured by different standards, depending on the varying circumstances of each particular case. Where the injury to real property is merely temporary, or where the property can be restored to its original condition, the measure of damages may be, or should include, the cost of repairs or restoration, as where the injury is susceptible of remedy at a moderate or reasonable expense and the cost of restoration may be shown with reasonable certainty, or where the cost of restoration is less than the diminution in the value of the property. This is particularly true where the adoption of the difference in value as the measure of damages would be difficult and uncertain, or where the injury is not so much to the land itself as to improvements thereon. * * * (25 C.J.S. Damages § 84, pp. 921-925)
The problem here is not what the rules are, but rather which rule should apply, the permanent or temporary damage rule.
In the case of Broadhead v. Gatlin, 243 Miss. 386, 137 So.2d 909 (1962), where an oil company permitted chemicals to overflow from its slush pit into a land owner's fish pond killing fish, cattle and causing damage to land owner's fish pond and pasture, this Court held that the failure of the land owner to ask an instruction upon the "before and after rule" was a reversible error.
In Mississippi Power Company v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963), this Court held, in a case involving the loss of a building by fire and also certain personal property, that the land owner could recover for permanent injury to the land and also the loss of personal property.
In Mississippi Tank Co. v. Roan, 254 Miss. 671, 182 So.2d 582 (1966), this Court held that the damages for the loss of a farmhouse should have been determined by applying the "before and after rule" to the whole property rather than to the house alone.
From the foregoing authorities it is obvious that the "before and after rule" was the proper rule to be used in determining the damages to the land owner in the case at bar. This is not to be understood to mean, however, that a defendant cannot challenge the assertion that the damages are of a permanent nature by showing that the injury is temporary and that the loss may be restored at a cost less than the damages because of a permanent injury.
It is not clear from the evidence whether or not the land lowner was testifying about the value of his whole place before and after the injury or the forty acres mentioned in the declaration. Nevertheless, we are of the opinion that the trial court committed reversible error in granting a judgment in favor of the appellee, Mandrel Industries, Inc., and that this judgment must be set aside. On the other hand, we are not satisfied with the amount of the original verdict returned by the jury; nor do we agree with the contention of appellee, Mandrel Industries, Inc., that the appellant, W.W. (Bill) Bynum, is only entitled to nominal damages.
The appellant testified that the fair market value of the forty-acre tract of land before it was damaged was $12,000, and that after the damage occurred it was only worth $4,000. The record shows that appellant paid $6,000 for three forty-acre tracts, which included the forty on which the pond was located, and that a similar pond could be constructed for less than $400. It is, therefore, apparent that the jury had no evidence on which to base a verdict of damages except the idea of the land owner as to the value of his property, and no testimony is offered as to his knowledge of land values in or near his home.
*636 It is a general principle of law that damages must be established with reasonable certainty  Chevron Oil Co. v. Snellgrove, supra; 25 C.J.S. Damages § 26, p. 675 (1966)  and, although it is true that a land owner may testify as to the "before and after" value of his land  Mississippi State Highway Commission v. Pepper, 250 Miss. 755, 168 So.2d 307; 250 Miss. 347, 164 So.2d 911 (1964); Mississippi State Highway Commission v. Ladner, 243 Miss. 278, 137 So.2d 781 (1962); Mississippi State Highway Commission v. Fleming, 242 Miss. 402, 135 So.2d 821 (1962); Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So.2d 467 (1961); Mississippi State Highway Commission v. Strong, 240 Miss. 756, 129 So.2d 349 (1961)  nevertheless, his testimony should have some basis expressed in evidence on which to substantiate his opinion.
In the Fleming case above, we pointed out that the land owner gave no rational basis for his opinion that his property was depreciated by more than one-third. The case was reversed because of excessive damages awarded to the land owner.
In City of Clarksdale v. Stuart, 184 Miss. 179, 185 So. 588 (1939), this Court pointed out that while a property owner's testimony is admissible as to land values, it is not conclusive.
The mere opinion of a land owner as to damages caused to his property is of little use to a jury unless the witness shows some knowledge of land values in the neighborhood or gives the jury some evidence on which he bases his fair market value testimony. Otherwise, his testimony may be of a personal value to him or an amount that he would like to recover. This means, of course, that although a land owner may testify as to the value of his land, the weight of his testimony is affected by his knowledge of fair market value. 20 Am.Jur. Evidence § 892, p. 751 (1939); Orgel on Valuation Under Eminent Domain, Vol. 1, 2d Ed., § 132, p. 564 (1953).
We are of the opinion that the judgment entered by the trial court in favor of the appellee, notwithstanding the verdict of the jury, should be, and is hereby, reversed.
The judgment entered upon the verdict of the jury in favor of the appellant, W.W. (Bill) Bynum, is hereby reinstated as to liability of the appellee, Mandrel Industries, Inc., but a new trial is awarded to determine the damages due the land owner, W.W. (Bill) Bynum. See Yazoo & M.V.R. Co. v. Scott, 108 Miss. 871, 67 So. 491 (1914).
The judgment, notwithstanding the verdict of the jury, is reversed and judgment in favor of appellant reinstated as to liability and a new trial ordered as to damages.
GILLESPIE, P.J., and JONES, INZER and SMITH, JJ., concur.