RODGERS, Presiding Justice.
This was an appeal from a decision by the Chancellor, Division One, Hinds County, Mississippi, dated October 17, 1973. The decision established the fair market value as of June 9, 1972, of one thousand two hundred and fifty (1,250) shares of stock in the Jackson Coca-Cola Bottling Company, a closely held corporation. This stock, for which the value had to be established, was part of the corpus of a testamentary trust left by Phillip Lee Borden.
Phillip Lee Borden set forth in his last will and testament very explicit instructions as to the distribution of the corpus upon termination of the testamentary trust, as follows:
“This trust shall end and terminate ten (10) years from the date of the death of my last surviving sister, and at such time my said Trustee, or any successor in trust, shall distribute the entire assets of said trust estate, both corpus and income, to my said nephew and nieces in the following amounts or proportions, to-wit:
To Charles R. Bowman (The same person as said Trustee) six-tenths (6/10ths).
To Mrs. Stella Bowman Funkhouser, my niece, one-tenth (l/10th).
To Mrs. Zada Bowman Williams, my niece, one-tenth (l/10th).
To Mrs. Daisy Bowman Young, my niece, one-tenth (l/10th).
To Mrs. Pauline Bowman Coulbourne, my niece, one-tenth (l/10th).
In dividing and distributing said trust estate, however, I expressly desire, and hereby so stipulate, that all capital stock in the Jackson Coca-Cola Bottling Company, Inc., a Mississippi corporation domiciled at Jackson, Hinds County, Mississippi, shall be distributed and delivered to my said nephew, Charles R. Bowman, as part of his six-tenths share of said trust estate (except, however, if the fair value of said capital stock exceeds the fair value of six-tenths of said trust estate, then the said Charles R. Bowman to receive only such part of any capital stock in said corporation as does not exceed six-tenths of the fair value of the entire trust estate).”
The date agreed upon for the termination of the Phillip Lee Borden testamentary trust was June 9, 1972, ten (10) years after the death of Mr. Borden’s last sister. The issue on appeal is the value found by the chancellor for this 1,250 shares of stock in the Jackson Coca-Cola Bottling Company. The chancellor, after hearing the evidence offered by the parties, accepted briefs and took the matter under advisement. After study and deliberation, he found that the stock in the Jackson Coca-Cola Bottling Company was worth two thousand four hundred dollars ($2,400.00) per share as of June 9, 1972.
The ruling of the trial judge in rejecting the testimony of the sales of alleged comparable stock in other companies was not reversible error because it is within the sound discretion of the trial judge to determine whether or not the sales of stock were based on comparable companies not only in name and similar stock dividends, but also in plant value and liquid assets. Moreover, the alleged sales of stock must have occurred sufficiently close in point of time to afford a fair comparison.
In the instant case, the rejected testimony was cumulative and if, in fact, the trial court erroneously rejected this evidence, its ruling did not constitute a reversible error.
The appellants contend that the chancellor w.as manifestly in error, as a matter of fact and law, in refusing to allow the witness Thompson to give his opinions as an expert witness on the highest price earnings multiple that he would pay for a minority interest in a closely *230 held corporation. This Court finds, after studying the record and hearing oral argument, that the chancellor did not err in refusing to allow the witness Thompson to testify as an expert. The record shows the following colloquy:
"BY MR. FRANKS:
Q. Mr. Thompson, based on your experience in trading the minority interest in privately owned, non-publicly traded Coca-Cola company stock,, do you have an opinion as to what the highest price earnings multiple would be that you would consider paying for such interests ?
BY MR. WELLS: If the Court please, we don’t believe he has been tendered as an expert in the field. He can testify about three occasional sales in the plant that he has got an interest in, and that is one thing. But now he is being asked to testify about a broad range as an expert and we submit that he is not qualified to do that.
BY THE COURT: The objection will be sustained.”
At this point counsel for the appellants asked for the court’s permission to make a record as to what the witness would answer rather than asking for permission to qualify him as an expert. The court allowed him to do this.
“BY MR. FRANKS:
Q. If you were allowed to answer the question that I just gave you — asked you, what would be your answer?
A. I rarely have purchased on a P-E [price earnings] ratio that exceeded seven, and I have purchased in, say several other companies, on the basis of maybe purchasing for other people, but I wouldn’t take it myself even at less than seven because I just don’t believe in being a minority stockholder in a closely held corporation.”
In addressing the admission of expert testimony, we have said:
“[T]he qualification of an expert witness is addressed to the judicial discretion of the trial judge; Saucier v. Talkington, 251 Miss. 519, 170 So.2d 434 (1965); 31 Am.Jur.2d Expert and Opinion Evidence § 31, p. 530 (1967); . ” Bynum v. Mandrel Industries, Inc., 241 So.2d 629, 633 (Miss.1970).
We also cited in Bynum, supra, the rule set forth in Glens Falls Insurance Co. v. Linwood Elevator, 241 Miss. 400, 130 So.2d 262 (1961): “. . . . [I] t is largely within the discretion of the trial judge as to whether or not a witness will be permitted to testify as an expert.” 241 Miss. at 419, 130 So.2d at 268.
Under the terms set out in the testamentary trust, the appellants desired a lower evaluation per share of stock than that found by the chancellor. The lower the value per share the appellants could have obtained from the court, the larger the number of shares they would have received under the terms of the testamentary trust.
Both sides endeavored to prove by the use of expert witnesses what should be the value assigned the stock as of June 9, 1972. The chancellor listened to the experts offered and then took briefs from the parties on the issues raised. In making his determination as to the value of the stock, it would appear that the chancellor followed and agreed with the methods set forth by the appellee’s expert witnesses, Cecil Brown, a certified public accountant, and Sam P. Peters, a management consultant to the bottlers of Coca-Cola who specializes in acquisitions, mergers, and/or sales of Coca-Cola plants. It was Mr. Brown’s professional opinion that as of June 9, 1972, the stock was worth a minimum of two thousand four hundred dollars *231 ($2,400.00) per share and a maximum of two thousand eight hundred dollars ($2,800.00) per share. He used a method known in accounting procedures as “capitalization of earnings” to obtain the above values.
Mr. Peters, the management consultant, was of the opinion that the 1,250 shares of the Jackson Coca-Cola stock which amounted to 35.71% of the total outstanding stock of the company was worth from two thousand four hundred dollars ($2,400.00) to two thousand five hundred dollars ($2,-500.00) per share as of June 9, 1972. In making his assessment of the value of the stock, this expert witness used eight factors to arrive at what was, in his opinion, a balanced evaluation of the plant: (1) current earnings, (2) a weighted average of the last five years audited net earnings, (3) unit sales, (4) a weighted .average of the last five years of unit sales, (5) cash flow [It was his opinion that in acquiring a Coca-Cola plant one would incur a debt. The ability to pay the debt is based many times on cash flow.], (6) a weighted average of cash flow for the last five years, (7) gross revenues, and (8) capital assets adjusted. He also injected into his computation long-term debt and present available working capital possessed by the company being evaluated. Lastly, a factor known as “other considerations” was injected into the study of the evaluation of stock. These were things which did not lend themselves to a strict mathematical computation, i. e., size of the available market, location of the territory of the company, the highway structure, management, possibility of becoming a production center for small plants, etc.
In order for the appellants in the instant case to prevail, it must appear from the record that the decision rendered by the chancellor was manifestly wrong. This we do not find to be the case. This Court addressed itself to the discretion of the chancellor when we handed down Cal-Maine Foods, Inc. v. Duvic, 264 So.2d 383 (Miss.1972):
“Since the question of fair value was purely factual, it was peculiarly within the province of the chancellor, as the trier of facts, to evaluate the evidence, resolve conflicts and to draw reasonable inferences from it. Viewing the evidence in the record, both oral and documentary, from that standpoint, and reading the chancellor’s opinion giving the basis of his finding, we are unable to say that it was not sufficiently supported by the evidence or that he was manifestly wrong. Consequently, the decree appealed from must be affirmed. Griffith, Mississippi Chancery Practice section 674 (2d ed. 1950), and authorities there cited.” 264 So.2d at 384.
For the reasons above set out, it is the opinion of this Court that the ruling of the chancellor should be, and the same is hereby, .affirmed.
Affirmed.
GILLESPIE, C. J., and PATTERSON, INZER, SMITH, ROBERTSON, and WALKER, JJ., concur.