Anderson-Tully Co. *et al. v.* Campbell *et al.*

(Division A.  Nov. 16, 1942.  Suggestions of Error Overruled Jan. 11, 1943.)

[10 So. (2d) 445.  No. 35068.]

Dent, Robinson & Ward, of Vicksburg, and **Williamson & Williamson**, of Monticello, Ark., for appellants.

**Brunini & Brunini,** of Vicksburg, for appellees.

. Argued orally by **Emmett Ward** and **Lamar Williamson**, for appellants, and by **John Brunini**, for appellees.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a decree enjoining the appellants from cutting timber on land owned by the appellees, and awarding actual, statutory and punitive damages for the cutting of timber therefrom by the appellants. The land lies in Sections 13 and 14, Township 9 North, Range 9 West, and G. H. Miller is the common source of title thereto of the parties hereto.

On May 4, 1915, Miller executed a deed to Moorman, and on October 1, 1917, he executed another to Murchie, the description of the land in both of which the reporter will set out in full.[1] The appellees have succeeded by

---

[1]Miller deed to Moorman, ". . . I, G. H. Miller, do convey and warrant to the said W. B. Moorman the parcel or piece of land known as Magna Vista Plantation, except the accretions thereto, situated in Issaquena County, and State of Mississippi, and more particularly described as follows:

"That certain tract or parcel of land lying and being in Township Nine (9) North, Range Nine (9) West, Issaquena County, Mississippi, and more particularly described as follows:

"All of Fractional Section Thirteen (13); all of Section Twelve (12) except seven acres sold to Richard Christmas as shown of record in Deed Book "D" page 40 of the records of deeds of Issaquena County, Mississippi; also the following described part of Section Eleven (11) and Fourteen (14) to-wit: Beginning at a point on the Bank of the Mississippi River at which a continuation of the back levee would strike the river; thence up the top of said levee and at the center thereof, following the meanderings thereof, to the point where the said levee intersects the north and south line between Sections Eleven (11) and Twelve (12); thence south with said Section line to the Mississippi River; thence with said River to the place of beginning.

"Said several tracts contain nine hundred eighty three and thirty-eight one hundredths (983.38) acres, more or less.

"All accretions adjacent to the South of the south line of said section Thirteen (13), and Fourteen (14) of said Magna Vista Plantation are hereby reserved from this conveyance, and title to which is not intended to pass by the conveyance but to remain in the said G. H. Miller. . . ."

Miller deed to Murchie. ". . . I, G. H. Miller, of Chattanooga, Tennessee, subject to the conditions and reservations hereinafter men-

mesne conveyances to the title to the land conveyed by these deeds to Moorman and Murchie. In June, 1920, Miller conveyed to the appellant Anderson-Tully Company "All the accretions to Sections Thirteen (13) and Fourteen (14) in Township Nine (9) North Range Nine (9) West . . . . in said Issaquena County, in the State of Mississippi," and "All the accretions, already made by the Mississippi River, to what is known as the Tennessee Plantation, situated in Issaquena County, in the State of Mississippi, being the same specially reserved and retained by G. H. Miller in deed to John M. Murchie dated October 1st, 1914, and recorded in Deed Book 'E. E.' page 519 of the records of deeds of said Issaquena County, and also such accretions to the said

tioned, do convey and warrant to the said John M. Murchie the plantation known as the Tennessee place,—except the accretions to Sections 13 and 14 and 15, which I specially reserve and retain and except from this conveyance, retaining the title and possession of and to all of the said accretions to said sections 13, 14 and 15, to and in myself, and convey, subject to such reservations, all of the land, as follows, to-wit,—situated in the County of Issaquena, and State of Mississippi, and particularly described as follows: The Southwest Quarter (SW¼) of Section Two (2), embracing one hundred and fifty-six (156) acres, more or less,—all of section Ten (10) containing six hundred forty-one (641) acres, more or less, all of section Eleven (11) and all of Section Fourteen (14), except one hundred fifty six (156) and forty-five one hundredths (156.45) acres off from the Eastern portion of the last two named sections Eleven (11) and Fourteen (14), as particularly described in a deed from Wirt Adams and wife to D. W. C. Bonham, recorded in Deed Book B, page 552; all of the above in Township Nine (9) North, Range Nine (9) West,—containing in—the aggregate one thousand four hundred forty-six (1446) acres, more or less; Except all accretions, as aforesaid. Also the unexpired lease to fractional school section Fifteen (15), Township Nine (9), North, Range Nine (9) West, containing One hundred Two (102) acres, more or less,— which commenced Oct. 20th, 1849, and will expire Oct. 20th, 1948, and which is fully described in a lease from the Board of Supervisors of Issaquena County to John Butts, recorded in deed Book Q, pages 184 and 185, of the records of said County,—excepting accretions to the above described and already made, or which may hereafter be made, by the Mississippi River in the front of said property. . . ."

Tennessee Plantation as have formed since the date of the said deed from the said G. H. Miller to the said John M. Murchie.''

Sections 13 and 14 are fractional sections, the south boundary of which is the Mississippi River, and a considerable body of land lying here north of the river consists of accretions to the river's former shore lines.

In 1823, the land was surveyed and platted by the government, the field notes of which survey show the then shore lines of the Mississippi River. When Miller's deeds to Moorman and Murchie were executed, the shore line of the river was some distance south of what it was in 1823, because of accretion to that shore line. According to the evidence for the appellees, all accretions south of the river's shore line in 1823 were made subsequent to that date. There is, however, a well-defined old river bank north of its 1823 shore line; and the evidence for the appellants is to the effect that, after 1823, the river encroached on the land as far north as this old river bank and thereafter receded gradually, leaving accretion to its shore lines until it reached the point where it now bounds the lands. The land in controversy is that between what was the river's shore line in 1823 and the old river bank north thereof.

The appellees' contention is that the accretion excepted from Miller's deeds to Moorman and Murchie is that only which lies south of what was the river bank in 1823 and formed after that date. The appellants' contention is that all accretion to the land was excepted from those deeds whether formed before or after 1823. The conclusion at which we have arrived, renders it unnecessary for us to determine whether or not the appellants' contention as to when this accretion was formed is correct.

The description of this land in Miller's deeds to Moorman and Murchie is by governmental sections numbers, and when such is the case, without more, the land conveyed is that ''which is situated within the designated

sections as surveyed and platted by the government." Goff v. Avent, 122 Miss. 86, 84 So. 134, 135. The plat and field notes of the government's survey of this land made in 1823 disclose, according to the evidence, that the shore line of Sections 13 and 14 was then where the appellees now claim, and but for the exception in these deeds they would have conveyed the land embraced in the government's survey of the sections, plus accretions thereto.

The land being excepted from Miller's deeds being described as "accretion," the question for determination is: Do these exceptions embrace all or a portion of the accretion, and if the latter, what part thereof? The difficulty which here arises could have been easily prevented by describing the excepted land in another manner, but that difficulty must be faced, and what Miller intended to convey must be determined, if it is possible so to do. When these deeds were made, the river's shore line was some distance south of where it was when the land was surveyed and platted by the government, so that a survey of the land then made in accordance with that of the government would have embraced what appears to be the same land as that described in the government's plat and field notes, and, as the evidence discloses, of the same acreage. We must conclude, therefore, as the court below did, that the land intended to be conveyed by Miller was that embraced in the government's plat and field notes, and that the accretion to the land excepted from his deeds was such only as was formed to the river's shore line as it appeared in the government's survey when the sections were platted. This conclusion is reinforced as to Miller's deed to Moorman by the use of the words "adjacent to the south line of said sections thirteen (13) and fourteen (14)."

This brings us to the question of the damages allowed to the appellees. No error here appears in the court's rulings on evidence offered in this connection. After al-

lowing actual value of the trees cut by the appellants, the court allowed the statutory penalty for the trees and punitive damages, including attorney's fees and certain expenses incurred by the appellee. Code 1930, Sec. 3411. The allowance of the first of these items is unexceptionable, but the statutory penalty and punitive damages, even if both are recoverable in cases of this character, as to which we express no opinion, should not have been allowed. It is true that the evidence discloses that the land was entered and part of the trees were cut by the appellants after they were informed that the appellees claimed to own the lands; but it is clear from the evidence that this was done under the belief that the land belonged to the appellant Anderson-Tully Company, and in view of the difficulty of determining where the line between the land conveyed by Miller's deeds and that retained by him therein should be drawn; or to express it differently, in determining that the land in controversy is not included in that excepted from these deeds, we must hold that this belief of the appellants was reasonable, and that the trespass committed was the result of an honest mistake.

The decree of the court below will be affirmed except in so far as it allows damages other than the actual value of the trees cut, and such other damages will be here eliminated.

So ordered.