CHEVRON OIL COMPANY v. SNELLGROVE

No. 43543          May 24, 1965          175 So. 2d 471

W. C. Wells, Jr., Wells, Thomas & Wells, Jackson, for appellant.

*Stanford Young,* Waynesboro, for appellee.

RODGERS, J.

This is an appeal by the Chevron Oil Company from a judgment of the Circuit Court of Wayne County, Mississippi, for damages alleged to have been inflicted on the land of plaintiff by defendant-company in conducting seismic exploration work thereon.

Plaintiff in the court below brought suit for damages caused by trespass upon the lands of appellee for actual and statutory damage to 150 trees, damage to cultivable lands and damage to a well. Defendant filed an answer denying the damages alleged by plaintiff and affirmatively pleaded that the statutory damage charged was barred by Mississippi Code Annotated section 1087 (1956) for the reason that the action was not brought within twelve months from the date of the alleged injury. The jury returned a verdict in favor of the landowner in the sum of $1,750.00. Motion for a new trial was filed, which was sustained unless a remittitur of $900 was entered by plaintiff. The remittitur was filed and a final judgment was entered in the amount of $850 in favor of plaintiff. From this judgment, defendant-appellant has appealed.

It appears from the record in this case that G. B. Snellgrove owned 220 acres in Wayne County, Mississippi, and in December 1960, he left his farm and moved to Florida because of his health. He permitted Mrs. J. J. McCurley to occupy the land and use it in his absence. Testimony shows that a well was bored near the house, from which water could be drawn by the use of a windlass and bucket. In 1962, an agent of appellant called on Mrs. McCurley to obtain permission for the purpose of conducting seismic exploration work on appellee's lands. Testimony is conflicting as to whether or not she gave permission. It is admitted, however, that the Chevron Oil Company went upon the land and bored holes, in which dynamite was exploded, and it is also admitted that some four or five trees were cut on the property. At the time that appellant went upon the property, there was not much water in the well, and after they had begun to "shoot", the water disappeared from the well, but it is also shown that the water had begun to diminish several months before the time the Chevron Oil Company conducted its operation on the

land. It is admitted that there were three "shot" points, or locations, used by the appellant. Each "shot" point consisted of five holes fifty feet deep, and two pounds of explosive were exploded in each hole. The center of the first shot point was 770 feet from the well. The center of the second shot point was 690 feet from the well. The center of the third shot point was 1,990 feet from the well. The landowner testified that one of the shot points was only 60 feet from his well. The landowner testified that there were 150 to 200 trees cut, and that the appellant's trucks cut ruts in the pasture and caused a wash in his cultivated land. The landowner also introduced a statement showing that he paid a well-drilling company the sum of $403.76 to drill and equip a new well. This well consisted of two-inch well piping, 64-feet deep, and an air-force powered jet pump, together with a 42-gallon tank, and a stainless steel screen. The landowner also testified that the damage to the trees was worth "$350 to him", and that he thought that the damage to his terrace would cost "$50 to get it fixed." The landowner's testimony shows that the trees said to have been cut by defendant were from the size of a finger to six or eight inches. No count was made of the actual trees cut, nor was any evidence offered to prove the market value of the merchantable timber.

## I

On appeal, the appellant complains that the trial court committed error in permitting evidence to be introduced with reference to the well: First, because there was no evidence that plaintiff's well was in any way injured by defendant's seismic work. Second, where the cost of repairs are relied upon as a measure of damages, the proof must establish (1) that repairs were necessary as a result of a wrongful act; and (2) the cost was reasonable.. There was no evidence introduced to show this necessary proof.

■■ We do not believe it is necessary to discuss the second point since we have held in a similar case that the mere proof that an event happened, or that a certain result was possibly caused by a past event, is not sufficient proof of proximate cause to make a jury issue.

In the case of Kramer Service, Inc. v. Wilkins, 184 Miss. 483, 469-497, 186 So. 625 (1939), we pointed out that "post hoc ergo propter hoc" is not sound as evidence on argument. Possibilities will not sustain a verdict.

In the case of Magnolia Petroleum Co. v. McCollum, 211 Miss. 166, 51 So. 2d 217 (1951), this Court discussed the testimony set out in several cases theretofore reported from this Court, and stated:

"In the case that we now have before us Leon Bryant, who drilled the new well for Scott McCollum, stated that it was his opinion that the concussion caused by the explosion of the 20-pound charge of dynamite caused the well curbing in the old well to give way. In the Pittman case experienced drillers of water wells testified that water in ample quantity and of usable quality was still available in Pittman's well, but that the well was too deep for the size of the pump, and another expert's view was that the cause of the stoppage was the faulty pump and strainer. These facts were pointed out in the opinion in the Pittman case to show a lack of causal connection between the explosion and the damaged condition of the well, and to distinguish that case from the case of General Geophysical Company v. Brown, 205 Miss. 189, 38 So. 2d 703.

"In the case that we now have before us we think that there was sufficient evidence to justify the jury in finding that the dynamite explosion was the proximate cause of the damage to appellee's well."

■■ In the instant case, the only testimony we have on the subject is to the effect that the dynamite charge used was not sufficient to damage the well here involved.

In fact the testimony is positive, and there is no testimony to the contrary; therefore, we must hold that the appellee-landowner was not entitled to recover under the facts in this case for damages alleged to have been done to his well. We discussed this point in a recent case. See Western Geophysical Company of America v. Martin, 253 Miss. 14, 174 So. 2d 706. We are of the opinion that this case now before the Court is controlled by that case as to the damage to the well.

The instruction requested by defendant that the jury could not allow plaintiff any amount for damages alleged to have been done by defendant to his water well should have been granted by the court.

## II

It is next contended by defendant, appellant here, that the following instruction was erroneously refused by the court:

"The Court instructs the jury for the defendant that even though you may believe from a preponderance of the evidence in this case that the defendant trespassed on the lands of the plaintiff, still, under the evidence in this case, you may find for the Plaintiff only for nominal damages."

The landowner testified, in answer to the question "Do you know the value of the trees that were cut?" that "Well, they were worth $350.00 to me when they were standing there, and now they are not any good to me, tore down, rotted, dead." He was asked: "Did you count how many merchantable size timber trees actually cut down, damaged?", and he answered: "I didn't ever check it that close." The landowner also testified "Well, they would run the size of your finger to six, eight inches", but said he did not count the trees.

It is a principle of universal application that every trespass gives the landowner a right to at least nominal damages. Keirn v. Warfield, 60 Miss. 799-

808 (1883). However, in order to recover more than nominal damages, actual damages must be shown. Clark v. Hart, 3 So. 33 (Miss. 1887). It is sometimes a preplexing question as to the method to be used in proving damages to real property.

As a general rule, the measure of damages in actions for permanent injury to land where there is no willful trespass is the difference in value in the before-and-after damage to the premises. We have called attention to this rule repeatedly. Waggener v. Leggett, 246 Miss. 505, 150 So. 2d 529 (1963); Union Producing Co. v. Pittman, 245 Miss. 427, 146 So. 2d 553 (1962). See also 87 C. J. S. *Trespass* § 117 (1954). It is also true that where the land, or buildings located on the property, has been damaged but the property may be restored to its former condition at a cost less than the value determined by the diminution of the value of the land, the cost of restoration of the property, plus compensation for the loss of its use, may be the measure of damages. Miss. Power Co. v. Harrison, 247 Miss. 400, 152 So. 2d 892 (1963); Copiah Dairies, Inc. v. Addkison, 247 Miss. 327, 153 So. 2d 689 (1963); Broadhead v. Gatlin, 243 Miss. 386, 137 So. 2d 909 (1962); Long v. Magnolia Hotel Co., 236 Miss. 655, 111 So. 2d 645, sugg. of error 114 So. 2d 667 (1959); Sears, Roebuck & Co. v. Creekmore, 199 Miss. 48, 23 So. 2d 250 (1945); Yorkshire Ins. Co. v. Brewer, 175 Miss. 538, 166 So. 361 (1936); Bowyer & Johnson Const. Co. v. White, 255 Fed. 2d 482 (1958). This rule, however, is usually confined to the introduction of evidence to show a reduction, and not an increase, of damages above the diminution in value of the land resulting from the injury. The damage for cutting and removing, or destroying, marketable trees, where the trespass is not willful, is generally held to be the value of the timber at the time and place where the trees were cut. Consumers Veneer Co. v. Chestnut, 210 Miss. 430, 49 So. 2d 734

(1951); Anderson-Tully Co. v. Campbell, 193 Miss. 790, 10 So. 2d 445 (1942); Teasley v. Roberson, 149 Miss. 188, 115 So. 211 (1928); Fleming v. Dunigan Cooperage Co., 144 Miss. 769, 109 So. 851 (1926); Barclay v. Smith, 36 So. 449 (Miss. 1904); Bond v. Griffin, 74 Miss. 599, 22 So. 187 (1897).

■■■ On the other hand, where the trees are not marketable as timber, or pulpwood, and have no value separate from the land, the measure of damages is the injury to the land that is caused by their destruction. Young timber, saplings or bushes, smaller than merchantable pulpwood, may have little value separate from the land. The land stripped of growing timber may have little value, but the standing timber and the land together may have considerable market value. The proper measure of damages for the destruction of small natural growth of timber would be the difference in value of the land before and after the injury. 87 C. J. S. *Trespass* § 121 (4), at 1080 (1954). Damages for destruction of "seedlings" on tree farms may be determined, however, by showing the cost of restoration, plus such injury as may be shown to have been done to the land. See also Stigall v. Sharkey County, 213 Miss. 798, 58 So. 2d 5 (1952).

In the case of Keystone Lumber & Improvement Co. v. McGrath, 21 So. 301 (Miss. 1897), where log haulers cut ruts in the real property of another, this Court said: "The plaintiffs were also entitled to such actual damages as the testimony fairly showed they had sustained, by reason of the cutting up of the land by wagons, etc." The record shows the damage in that case was estimated by witnesses.

Thus, it is seen in the case now before the Court we are dealing with three distinct methods of proof for the determination and measurement of damages to real estate. (1) A few merchantable trees were cut by appellant; (2) small natural growth of trees and bushes

were destroyed; and (3) it is alleged that ruts were cut in the land by trucks of the Chevron Oil Company which caused the land to wash.

McCormick, *Law of Damages* Section 126 (1935), at 492 says:

> "When trees, valuable chiefly for timber, are damaged or destroyed by fire or other cause, it is frequently said that the plaintiff may sue either for the loss or injury of the trees, when the damages are measured by the market value of the standing timber, or he may sue for the injury to the land, determined by the amount of reduction in value of the realty. As to mature standing timber, these measures seem to reach the same result, but, if some or all of the trees injured are immature and too small for cutting, then it behooves the plaintiff to shape his pleading and proof to support a judgment for the loss in value of the realty, as the mere recovery of the value of the young growth, if it had been cut for timber just before the injury, would not compensate him for its potential value."

This rule is set out in 15 Am. Jur., *Damages* § 118 (1938) at p. 528, as follows:

> "Some courts draw a distinction between standing timber which has a value independent of the land itself and young growing timber, and hold that in the former case the measure of damages is the value of the property actually destroyed and the injury beyond replacement to the premises as a whole, while in the latter case it is the difference in the value of the land before and after the injury. Under this rule, where part of the timber is marketable and part not marketable, the measure of damages applicable is one which will cover the entire loss and, hence, is the difference in the market value of the land before and after the injury."

After an extensive study of this case, we have reached the conclusion that appellee, plaintiff in the trial court, could have pursued either course, that is, since there were few merchantable trees, damage to the bushes and land, as well as to the merchantable trees, could have been determined by showing the difference between the value of the land before and after the trespass; or damage could have been determined by showing the value of the merchantable trees, plus damage in the diminution of the value of the land, but both methods cannot be used.

The proof in this record with reference to damages is not satisfactory because damages were not shown with reasonable certainty. State Highway Comm'n v. Brown, 176 Miss. 23, 168 So. 277 (1936). It is admitted that there was actual damage to the land, not only as to merchantable timber cut, but other damages were shown. The instruction requested by appellant with reference to nominal damages should not have been granted under the facts and admissions shown in this record.

This case must be reversed for a new trial to determine the amount of damages due the landowner. However, since the jury has determined that appellant trespassed upon the land of the appellee, we affirm the judgment of the trial court as to liability and reverse the case for a new trial as to damages only, but we hold that there was no damage shown to have been done to the well by appellant.

Affirmed as to liability, and reversed as to damages only.

*Lee, C. J., and Ethridge, Patterson and Inzer, JJ.,* concur.