C. F. W. CONSTRUCTION Co., INC. *v.* McNUTT, et al.

No. 43643 November 8, 1965 179 So. 2d 806

*Hugh N. Clayton,* New Albany, for appellant.

*Mitchell, McNutt & Bush,* Tupelo, for appellees.

LEE, C. J.

Robert Norwood McNutt and wife filed their bill of complaint, being an attachment in chancery, against C. F. W. Construction Company, Inc., to recover damages to their property and for the recovery of the statutory penalty for cutting trees thereon in violation of the statute. From a decree for the complainants, the defendant appealed.

The litigation arose in this manner: The City of Tupelo advertised for contractors to build a trunk sewer line in the city. C. F. W. Construction Company, Inc., was the successful bidder therefor.

The proposed improvement was to cross the lands of Robert Norwood McNutt and wife. They owned. a home in the city, with approximately 4.11 acres of land. The city attorney, Frank Riley, contacted McNutt with reference to obtaining an easement of 20 feet across this property. McNutt wanted the line to be laid out on the ground, showing where it would run. An assistant to the city engineer, Ackin, and the engineer himself, Bob Cook, went over this property with McNutt and staked out the easement as it was to run. There was the grant of a permanent easement covering 2 feet, and additionally 8 feet on each side of the line as a temporary construction easement, involving a total of 20 feet. The easement also showed the trees that would be cut or damaged. The McNutts executed the easement for which they received no monetary consideration.

The work was begun over the McNutt land on December 3, 1963. McNutt testified that he observed the approach of the construction, before it reached his place,

and saw that they were cutting a wider path than was called for in his easement. He had a conference with the foreman on the job and called attention to the center line stakes and that he was to go only 10 feet on either side. Several days later, when the company's crew was digging a manhole, they piled some of the dirt off the easement and damaged some small trees. McNutt conferred with the foreman again and made known to him specifically that the work was not following the easement. Not being satisfied from his conference with the foreman, McNutt got in touch with the superintendent of the job, a Mr. Cushman, took this man over the property, and showed him the bounds of the easement. Cushman replied that they would have to get off the easement. McNutt informed him that they could not. Thereupon Cushman said that they were going to build the sewer line. When McNutt stated that they would be trespassing and be liable for statutory penalty in addition to actual damages, Cushman replied that he supposed the company could pay the damage, if McNutt wanted to make a claim.

After this conversation with these representatives, and after observing the dirt which was placed outside the easement, McNutt counted the trees on the area, subject, as he thought, to the statutory penalty. Later he made a list, detailing the number of trees, the character and kind of each, and those which were either destroyed or damaged; and he testified that there were approximately 400, 251 of which were completely destroyed while the others were damaged in different degrees.

It was shown that the company had never requested the city to obtain an additional easement for this construction. It was also repeatedly called to their attention that they were trespassing. Ackin, the assistant to the city engineer, testified that he told the representatives of the company to stay on the 20 foot easement,

and, when they got off the 20 foot easement, they were violating his instructions.

During the progress of the work, McNutt again protested to Cushman, but he was given another answer of the same tenor, namely, that they were going to build the sewer line, and if he wished to do so, he could file his claim for damages.

About the time of the completion of the work, McNutt made another protest to Farrar, who had replaced Cushman as superintendent; but again no satisfaction was obtained.

Some time after this suit had been filed, it was necessary for the company to return to the work in order to make repairs. McNutt testified that, at that time, he asked them not to damage the trees, but they did damage one, and McNutt talked to Farrar about the matter. He, however, replied that they were going to build the line and that they did not care what they did, and that the next time, if McNutt came out and tried to tell them what to do, he would not be dealt with in as friendly manner as they had treated him in the past. For that reason, the complainants filed a supplemental bill to recover for further trespasses on their property.

McNutt testified as to the number of trees of the type subject to the statutory penalty. He said that there were 198 of a market value of $5 each; that it would cost over $2,700 to restore the trees, as they formerly stood; that he had paid $379.50 for the repair of damaged trees; and that he had entered into a contract for the removal of the dirt out of the lake and other places for the sum of $781.50. He further testified that both the amount spent and that to be expended were reasonable values for that work. James Brown, a landscape architect, was fully cognizant of the nature of the work to be done, and he testified that those prices were reasonable.

For the defendant, J. L. Minor, an appraiser, was of the opinion that the damage to the property was

$1,400. He had not seen the property before the construction work was done, and his estimate was based on the damage which remained after the work, for which McNutt had paid $1,161, had been completed. The witness did not allow anything for the trees which were cut on Lot 7 of the land. Another witness, Jack Mann of Jackson, Mississippi, was of the opinion that the actual damage was $1,000. However he did not allow any damages for the actual value of trees which were destroyed.

At the instance of the defendant, the chancellor viewed the property. In his decision, the learned chancellor held that 251 trees, which fell into the category entitling the owner to the statutory penalty, had been destroyed; besides, he was of the opinion that the actual value of the trees cut was $1,500. He also concluded that the repair of the damaged trees in the sum of $1,161 was not excessive. Consequently he awarded actual damages in the sum of $2,660 and the statutory penalty in the amount of $3,765, being $15 per tree for 251 trees.

Substantially, the contention of the appellant is that the City of Tupelo was exercising a governmental function; that, under the contract, the city was obligated to furnish the right of way for the sewer line; that the work was supervised, approved and accepted by the city's engineers and the city in accordance with the contract; that it was not charged with negligence; that such damage as was sustained by the complainants was a mere incident to the performance of its obligation and constituted a taking of such private property for a public use; and that it was not liable, but was entitled to be protected by the city's immunity.

On the contrary, the substantial contention of the appellees is that (1) the construction of a sewer line is not a governmental function; but that (2) a contractor is liable for a trespass on adjoining property while engaged in performing a contract with a governmental

agency; and that (3) an overwhelming majority of the courts hold that a contractor is liable for a wilful trespass, committed in performing such a contract, although the contractor may not be liable for consequential damages, resulting from the performance of such contract.

The Court, on motion of the complainants, struck paragraphs 21 through 29 of the defendant's answer. These paragraphs constituted affirmative defenses, resting upon the propositions that (a) the defendant was simply performing its contract; (b) the City furnished the engineers and they supervised the construction; (c) the work was approved by them; and (d) the city was under the obligation to furnish the right of way, and the appellant did only what was necessary.

The appellant cites a number of cases which, it contends, support its contention. Many of these cases are from other jurisdictions, although in the list, are cited as applicable the cases of Covington County v. Watts, 120 Miss. 428, 82 So. 309 (1900), and Tishomingo County v. McConville, 139 Miss. 589, 104 So. 452 (1925).

The case of Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S. W. 2d 1 (1950), gives the rule in that state to the effect that ''a contractor constructing a public improvement for a public authority is not liable to a private property owner for the resulting damage where the contractor acts in accordance with the public authority's orders and is not itself guilty of negligence in the manner in which it does the work,'' citing authorities. Note how this rule in qualified, whereby *the contractor itself may be liable if it is* ''guilty of negligence in the manner in which it does the work.'' See also 40 C.J.S. *Highways* sec. 212, p. 208 (1944) as follows:

''Generally, where a contractor performs the construction work in accordance with its contract with, and the plans of, the highway authorities, the highway authorities, and not the contractor, are liable for damage to property resulting from the construction.''

It is apparent that the rule, sought to be emphasized by the appellant, has no application where the contractor is guilty of tortious conduct off the right of way of the improvement and constitutes a wrongful trespass on the property of an adjacent owner. See 40 C.J.S. *Highways* sec. 212, pp. 208-9, as follows:

"However, the contractor, and not the highway authority, is liable for damages resulting from his own tortious acts in the performance of the contract, as where he is negligent, or commits an unauthorized trespass on the property off the right of way."

The Tennessee case of Wood, *supra,* recognized the rule in its entirety. The opinion cited the following excerpt from its own case of Newberry v. Hamblen, 157 Tenn. 491, 495, 9 S. W. 2d 700, 701 (1928), as follows:

"If the injury is a necessary incident of necessary blasting in construction of the highway, the damages are chargeable to the condemnor, here the county. But, *if the injury is not such a necessary incident, but is the result of negligence of the contractor, then the damages are chargeable to him."* 191 Tenn. 478, 483-4, 235 S. W. 2d 1, 3 (1950). (Emphasis supplied).

Also in the Pennsylvania case of Valley Forge Gardens, Inc. v. Morrissey, 123 A. 2d 888 (1956), the opinion cited with approval 40 C.S.J. *Highways* sec. 212, p. 208, which has been referred to and quoted in part above. Many other cases, cited by appellant, are of like import.

The provision of section 39 of the contract, providing for the right of way easement, must be kept in mind. That provision was in these words:

*"RIGHTS-OF-WAY AND SUSPENSION OF WORK* The *owner shall furnish all land and rights-of-way* necessary *for the carrying out* of this contract and the completion of the work herein contemplated *and will use due diligence in acquiring* said land and *rights-of-way as speedily as possible.* But it is possible that all lands and *rights-of-way may not be obtained as*

*herein contemplated before construction begins,* in which event the *Contractor shall begin his work upon such* land and *rights-of-way as the Owner may have* previously *acquired* and *no claim for damages* whatsoever *will be allowed by reason of the delay in obtaining the remaining* lands and *rights-of-way.* Should the *Owner be prevented* or enjoined from proceeding with the work, or from authorizing its prosecution, either before or after the commencement, by reason of any litigation, or *by reason of its inability to procure any* lands or *rights-of-way for the said work, the Contractor shall not be entitled to make or assert claim for damage by reason of said delay or to withdraw from the contract* except by consent of the owner; but *time for completion* of the work *will be extended* to such times as the Owner determines will compensate for the time lost by such delay, such determination to be set forth in writing.'' (Emphasis supplied.)

▆▆▆ It was shown that the appellant did not require the city to furnish a wider right of way before it proceeded further. Besides, according to the evidence of one of the city engineers, the appellant was advised that, if it got beyond the 20 foot right of way, it would be trespassing and disobeying his orders. In addition, the evidence showed that McNutt had repeatedly protested against the trespasses and invasions by the appellant and its agents. The evidence was ample to show that the trespasses were wrongful.

In the case of L. & A. Contracting Corp. v. Hube, 241 Miss. 710, 133 So. 2d 394 (1961), the State Highway Commission had purchased a right of way from Hube across his 120 acres of land. The company was the prime contractor on this project. There was an old farm road over part of the Hube property, but the owner had posted ''no trespassing'' signs on and along it. The company ignored those signs; and its agents, using the old road, drove its numerous vehicles across the field.

The result was that many pine seedlings and other trees were damaged. Hube had observed this damage shortly after it began, and he protested to the foreman of the crew. Thereafter the employees of the company continued their driving over the field. It was only after formal notice had been given that the company stopped their trespassing. The trial court found that 688. pine seedlings had been damaged or destroyed. It awarded actual damages for the amount attributable to the company and the statutory penalty for $15 per tree on 172 trees.

The right of way lease in the Hube case, *supra,* contained the usual release on account of the construction of the road, and any other damages whatsoever. The company contended that the release to the State Highway Commission also included the damage to the timber which it had destroyed or damaged. The court rejected this contention, the opinion saying that, ''We do not think this release was intended to extend to wilful or grossly negligent damage to the surface of and timber on grantors' adjacent property.'' In addition it also said: ''The release covers the normal and necessary public operations of the Commission and its contractors.'' Besides, the opinion further said: ''It was not within the intent of the parties to release the Commission's contractor from tortious acts committed on the grantor's adjacent land either intentionally or through gross negligence.''

 █ It is clear that the trial court was warranted in finding that the damage in this instance was not mere consequential damages, but damages resulting from the wrongful tort of the appellant. Besides, the appellant was liable not only for actual damages but, in the absence of good faith, for the statutory penalty for wilful cuttings, in the nature of punitive damages. The proof of the number of trees was ample to justify the finding that 251 trees were destroyed within the contemplation of the statute subjecting the offender to the infliction of the penalty.

▆▆ ▆ The Court has given full consideration to the method of determining the actual damages sustained as the result of the wrongful acts of the appellant. It is satisfied that the damages, as measured by the trial court, were justified under the authority of Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So. 2d 471 (1965) ; L. & A. Contracting Co. v. Hube, *supra;* Austin v. Millspaugh, 90 Miss. 354, 43 So. 305 (1907) ; and Louisville & Nashville Railroad Co. v. Stewart, 78 Miss. 600, 29 So. 394 (1901).

From which it follows that the decree of the Chancery Court, was in all respects fully justified by the law and the evidence, and the cause must be and it is affirmed.

Affirmed.

*Gillespie, Rodgers, Brady and Patterson, JJ.,* concur. *Inzer, J.,* took no part.