534 So.2d 1008 (1988)
R & S DEVELOPMENT, INC., and Randall G. Saxton
v.
Lewis WILSON, Lillian Gaines Wilson, Lucy B. Peck, June D. Ratcliff and Robert M. Hederman, Jr.
No. 58021.
Supreme Court of Mississippi.
November 9, 1988.
Rehearing Denied December 21, 1988.
*1009 Jim Bullock, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, for appellant.
Barry H. Powell, Thomas, Price, Alston, Jones & Davis, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
SULLIVAN, Justice, for the Court:
This case arises out of a dispute over title and damages to portions of a 20 foot alleyway in the Belhaven Heights Subdivision.
A hearing was held on September 27, 1985, on Plaintiffs' Motion for a Preliminary Injunction and the Hinds County Chancery Court issued an initial opinion on October 3, 1985, prohibiting the defendants from doing any further work in the alleyway.
Following an amended complaint and completion of discovery, the plaintiffs settled with the defendants, A.E. Saxton and B & S Services for $3,000.00. On August 4, 1986, the Chancery Court determined that the City of Jackson had abandoned the alleyway and title had reverted to the adjoining property owners. This decree also awarded damages to the plaintiffs Hederman and Wilson in the amount of $12,700.00 and $2,755.50, respectively, less $1,500.00 from each plaintiff for the prior settlement payment.
On September 22, 1986, a supplemental trial was held to determine the amount of punitive damages and litigation costs to be awarded. When this hearing was over the chancery court awarded the plaintiffs punitive damages against R & S Development, Inc., and Randall Saxton, jointly and severally, in the amount of $29,800.99. Of this amount, $19,800.99 went directly to the plaintiff Hederman as reimbursement of attorneys fees and litigation expenses which he had expended on behalf of all plaintiffs. Finally, the chancellor permanently *1010 enjoined the defendants Randall Saxton and R & S Development from attempting to use or interfere with the plaintiffs' portion of the alleyway.
All of the named parties own lots in the Belhaven Heights Area, which are adjacent to the alleyway in question. The total number of lots involved is four. The alleyway is a 20 foot strip between the east line of the lots owned by Saxton, R & S Development, and the Wilsons, and the west line of the lots owned by Hederman, Peck and Ratcliff, those being Lots No. 11-14 in Block 60 of the Belhaven Heights Subdivision.
Shortly after R & S Development purchased its lot, it began to construct a duplex for Randall Saxton, who is the President of R & S Development. Saxton planned to use the alleyway in question for ingress and egress to the duplex being constructed on lot No. 11. This alleged public alley was never used for any alleyway purposes, and has never been used by the City of Jackson for any purpose at all. Plaintiffs Peck and Ratcliff had a garage extending almost 10 feet onto their portion of the alley. The Wilsons kept their portion of the driveway in flowers, ornamental shrubs and trees. The Hederman portion of the alley had been maintained in azaleas and dogwoods.
Against the advice given to them by a Jackson City Engineer, R & S Development employed B & S Services to bulldoze the alleyway, without the prior consent of the adjoining landowners or of the city. Immediately, Mrs. Wilson protested to A.E. Saxton, the owner of B & S Services, and demanded that B & S cease the bulldozing of her portion of the alleyway. An agent of Mr. Hederman protested on two occasions. Randall Saxton told Hederman's agent that he had obtained the necessary permission from the city.
R & S Development, Inc., and Randall Saxton appeal to this Court and raise four issues.

I.

DID THE TRIAL COURT ERR IN FINDING THAT THE ALLEY HAD BEEN ABANDONED, AND THAT TITLE REVERTED TO THE ADJACENT PROPERTY OWNERS?
The appellants take the position that mere non-use of the alley does not ripen into an extinguishment of a public right, and therefore, the court was in error in determining that the alley had been abandoned and title had reverted to the property owners. Furthermore, Saxton argues that the power to close a municipal street is vested exclusively in the municipal authority by virtue of Miss. Code Ann., § 21-37-7 (1972).
We dispose of the statutory argument. Section 21-37-7 is not the exclusive authority in this State for the closing of a municipal road. In City of Wiggins v. Breazeale, 422 So.2d 270 (Miss. 1982), this Court recognized that Miss. Code Ann., § 19-27-31 (1972), may be utilized in Chancery Court to vacate certain streets appearing on municipal plats, upon proper petition by a landowner. More recently, we reaffirmed our recognition of "what is in effect a common law abandonment ..." McNeely v. Jacks, 526 So.2d 541, 544 (Miss. 1988); see also, Picayune Wood Products Co. v. Alexander Manufacturing Co. 227 Miss. 593, 86 So.2d 480 (1956).
As to the common law abandonment theory challenged by Saxton, the clear trend of authority in Mississippi is that protracted non-use for an extended period of time is sufficient in law to create a presumption of abandonment. McNeely v. Jacks, 526 So.2d 541, 544 (Miss. 1988); Robert E. Ratliff Co. v. Mississippi Etc., 400 So.2d 1211, 1214 (Miss. 1981); Meadina v. State, ex rel Summer, 354 So.2d 779, 783 (Miss. 1978); Picayune Wood Products v. Alexander Manufacturing Co., 227 Miss. 593, 604, 86 So.2d 480, 483 (1956). That presumption is strengthened when there is proof also of an intent to abandon. Picayune, 227 Miss. at 604, 86 So.2d at 484. We need not consider whether mere non-use in itself ripened into an abandonment in this case because there are other indicia of adverse use which compelled the finding of intentional abandonment by the City of Jackson.
*1011 The proof established that no public use has been made of the alley in the 30 years preceding the trial, and that the City of Jackson has not exercised any act of dominion over the alley during that 30 year period. The city attorney stated that he was not going to take an active role in defending the city's right to the alley; and the city chose not to file a brief in response to the court's request for briefs from the parties. Any acts acquiesced in by the city which are inconsistent with a public right are circumstantial evidence of an intent to abandon.
The City of Jackson did not object when landowners Peck and Ratcliff constructed a garage extending approximately 10 feet into the alley behind Lot 14, and this garage replaced a similar structure existing there since 1963, all without objection from the City of Jackson; Robie Knight, a City Engineer, advised Randall Saxton to secure the prior consent of the adjoining landowners before constructing a driveway in the alley; landowner Hederman testified that the alley in general had been planted in shrubbery and other plants since the late 1940's, and the portion of the alley between Lots 11 and 12 has been planted for at least 15 or 16 years; and landowner Peck stated that the alley in question has been planted with azaleas since at least 1963. The exhibits in the record corroborate the distinctly private nature of the subject alley.
The complete, continuous and unexplained non-use of the alley by the general public for a period exceeding ten years gives rise to a presumption of abandonment, and the absence of dominion by the city, and the city's acquiescence in the placement of physical obstructions on the subservient alley, is inconsistent with any hypothesis other than that of an intent to abandon. The evidence combined to raise a very strong presumption of abandonment in favor of the landowners which was not overcome by Saxton. Title reverted to the adjoining landowners, who took, consistent with the recognized rule of conveyance, to the center line of the alley. See Moore v. Kuljis, 207 So.2d 604 (Miss. 1967). There is no merit to this assignment of error.
It should be noted that Saxton also argues under Assignment I that Miss. Code Ann., § 21-37-7 (1972), requires that due compensation be made to all adjoining landowners. However, this section applies only where the governing authority of a municipality closes or vacates an alley, not where the alley is closed under a theory of abandonment.

II.

THE TRIAL COURT ERRED IN FINDING THAT THE APPELLEES HAD BEEN DAMAGED BY ANY ACT OR OMISSION OF APPELLANTS; ERRED IN ITS ASSESSMENT OF ACTUAL AND PUNITIVE DAMAGES; AND ERRED IN THE METHOD OF ASSESSMENT OF DAMAGES.

A.

DID THE TRIAL COURT ERR IN AWARDING PLAINTIFFS HEDERMAN AND WILSON DAMAGES AS A RESULT OF APPELLANTS' ACTIONS?
The award of $12,700.00 and $2,755.50 is challenged on the basis that the evidence of damages is speculation based upon assumption.
The chancellor's finding that Hederman and Wilson suffered actual damages at the hands of the appellants is a finding of ultimate fact, and our scope of review requires that we reverse only in case of manifest error. Lovett v. E.L. Gardner, Inc., 511 So.2d 1346, 1349 (Miss. 1987). A review of the record shows that there is substantial evidence to support the chancellor's finding.
Testimony is undisputed that the excavation work performed by B & S Services proximately destroyed the shrubbery and flowers previously existing on the Hederman and Wilson parts of the alleyway. This excavation work was done without the prior consent of the adjoining landowners. Finally, there is credible testimony concerning the emotional toll that the actions of the appellants took on the plaintiffs. *1012 There is substantial evidence to support the finding of actual damages.
This damage is traceable to the actions of the appellants because there is joint and several liability among those who direct and commit a trespass for the damages which proximately result therefrom. Doom v. Thompson, 35 So.2d 535 (Miss. 1948). The excavation work was done on behalf and at the direction of Randall Saxton and R & S Development. The joint and several liability of the appellants was established, and the lower court did not err in assessing actual damages against the appellants.
Liability cannot be escaped on the grounds that the proof as to the amount of damages, if any, is too uncertain to justify the lower court's award. It is well recognized that "Mississippi is equally firm in its determination that a party will not be permitted to escape liability because of the lack of a perfect measure of damages his wrong has caused. Cf. Koehring Co. v. Hyde Construction Co., 254 Miss. 214, 178 So.2d 838, 853 (1965)." Johnston v. Safeco Insurance Co. of America, 727 F.2d 548, 551 (5th Cir.1984).
Here, the cause of the damage is certain. The extent of damages is uncertain because the defendants acted wrongfully and without prior consent or warning in destroying the plaintiff's ornamental plants and trees. The lower court recognized the landowners' difficult burden when it admitted a landscape architect's estimate over objection of Saxton. In proving damages to the Hederman portion of the alleyway, photographs were introduced into evidence which depicted the Hederman portion of the alleyway just prior to the excavation work. An expert landscape architect, accepted by the court and Saxton, then prepared an estimate of restoration based upon the photograph, and on personal observation of the site. This estimate was $12,700.00 to restore the Hederman portion of the alley to its before condition.
As to the Wilson part of the alleyway, their daughter testified without objection to the various plants and trees in this area. Based on the witness' testimony as to the number, size, and kind of shrubs and trees, the expert was asked a hypothetical question and estimated the cost of restoration to be $2,755.50. These amounts were awarded by the court to Hederman and Wilson as actual damages.
Since the best the landowners could do under the circumstances is a "fair and reasonable estimate," or a just and reasonable inference, the weight, credibility and worth of the architect's estimates rested solely with the chancellor. Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984).
It is a simple concept that a wrongdoer should bear the risk of any uncertainty which his wrong has created, and such a rule "has poignant application in such a case as this" because not only did the appellants cause the damage, they destroyed the very evidence which would have enabled the landowners to determine the number, size and kind of shrubs and trees cut with any precision. Nichols v. Stacks, 485 So.2d 1034, 1038-39 (Miss. 1986).
There is no merit to this assignment of error.

B.

DID THE COURT ERR IN AWARDING COSTS OF RESTORATION?
In reviewing the record, it appears that this issue was never presented to the trial court. Under our familiar rule, we need not address issues which are presented for the first time on appeal, Crenshaw v. State, 520 So.2d 131, 134-35 (Miss. 1988), but here we will for the sake of clarity.
As a general rule, the measure of damages for injury to land is the difference in value of the land before and after the trespass. However, this rule applies only in cases of permanent injury to realty. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 364, 175 So.2d 471, 474 (1965); and Sun Oil Co. v. Nunnery, 251 Miss. 631, 646, 170 So.2d 24, 31 (1964). Where, as in this case, the injury to the land "is temporary and subject to restoration, the proper measure of damage is the cost of restoration." *1013 Buras v. Shell Oil Co., 666 F. Supp. 919, 923 (S.D.Miss. 1987), citing Sun Oil Co. v. Nunnery, 251 Miss. 631, 170 So.2d 24, 31-32 (1964); see also, Teledyne Exploration Co. v. Dickerson, 253 So.2d 817, 819 (Miss. 1971), citing Chevron, supra, and Sun Oil Co., supra.
The lower court correctly awarded damages to the plaintiffs Hederman and Wilson for the costs of restoration, and there is no merit to this argument.

C.

DID THE COURT ERR IN ITS ASSESSMENT OF PUNITIVE DAMAGES?
Saxton cites no authority to support this argument and our rule in this situation is as clear as it is familiar. Notwithstanding this procedural bar, we will address the merits of Saxton's argument.
Saxton makes no argument that punitive damages are not warranted. Instead, Saxton argues that the legal fees awarded as part of punitive damages were not properly allocated between the legal services rendered on behalf of the plaintiffs against B & S Services and A.E. Saxton, and the legal services rendered on behalf of the plaintiffs against R & S Development and Randall Saxton.
Punitive damages may be awarded as punishment for trespass where the proof shows the trespass was willful, grossly negligent or wanton. Seismic Petroleum Services, Inc. v. Ryan, 450 So.2d 437, 440 (Miss. 1984).
Furthermore, attorneys fees may be included as part of an award of punitive damages. Grisham v. Hinton, 490 So.2d 1201, 1206 (Miss. 1986); Blue Cross & Blue Shield of Miss. v. Campbell, 466 So.2d 833, 845 (Miss. 1984).
The chancellor awarded the plaintiffs punitive damages against Randall Saxton and R & S Development in the total amount of $29,800.99; $19,800.99 was awarded directly to Robert Hederman as reimbursement for attorneys fees and litigation expenses. The asserted error lies in the failure to apportion the fees between all original defendants. This is indeed a novel question. Randall Saxton and R & S Development are not entitled to seek statutory contribution from A.E. Saxton and B & S Services for a proportionate share of the legal expenses levied against them, even though these defendants are joint tortfeasors and in pari delicto, because they are not joint judgment debtors as required by the statute. See Miss. Code Ann., § 85-5-5 (1972). Conversely, there is the rule that uncertainty as to the amount, and arguably as to the allocation of damages will not preclude the plaintiff's right to recover. See Johnston v. Safeco, supra. By analogy to State Farm Mutual Auto. v. Commercial Union Insurance, 394 So.2d 890 (Miss. 1981), the latter rule controls.
In State Farm, State Farm Mutual Automobile Insurance Company sued Commercial Union Insurance Company in chancery court to recover attorneys fees incurred in the defense of two circuit court actions which arose out of an automobile-train collision. The chancellor found that State Farm was entitled to be reimbursed for attorneys fees incurred in the defense of one action, but denied recovery because the fees had not been properly allocated between the two suits. Commercial Union had a clear duty to defend in the circuit court actions, and when it failed to do so, State Farm, as the secondary carrier, fulfilled Commercial Union's obligations. Therefore, State Farm was clearly entitled to all reasonable and necessary expenses incurred in defending the circuit court action.
In State Farm, as in the instant case, there is no question that the actions of the defendants caused monetary damage to the plaintiffs. In particularly applicable language, we said, "[t]his is not a cause of speculation and conjecture as to whether there was monetary damage, but allocation of an admitted amount." Id. Applying the general rule as to proof of damages, this Court held that fees should have been awarded notwithstanding the uncertainty of allocation. Id. at 894-95.
Randall Saxton and R & S Development cannot escape liability for that part of *1014 the punitive damage award related to legal fees and expenses simply because those fees and expenses are not precisely allocated between all of the joint tortfeasors. A.E. Saxton and B & S Services paid their proportionate share by way of settlement. Furthermore, a remand for precise allocation would cause the appellants to incur additional fees and expenses. Any reduction in the amount of fees originally assessed against Randall Saxton and R & S Development would be substantially, if not totally, offset by the amount of fees and expenses they would incur upon the remand. The plaintiffs produced sufficient evidence to afford a reasonable basis for estimating the amount of legal fees and expenses incurred in pursuing their causes of action against the joint tortfeasors; for this, they should not be denied a recovery.
This assignment of error is without merit.

III.

DID THE TRIAL COURT ERR IN ALLOWING CERTAIN TESTIMONY AND DOCUMENTS INTO EVIDENCE, AND DID THE TRIAL COURT FAIL TO FOLLOW THE REQUIREMENTS OF SECTION 19-27-31, MISSISSIPPI CODE ANNOTATED?
We can't help but note that Saxton repeatedly ignores the separate and particular requirement of Mississippi Supreme Court Rule 6(a)[1] and presents more than one error under each assignment.
The chancery court has the authority to vacate maps or plats upon proper petition by a landowner pursuant to Miss. Code Ann., § 19-27-31 (1972). While as stated previously, this code section is not the exclusive authority for the taking of such action, and the court in this case proceeded on the theory of common law abandonment, Saxton's argument that this code section has not been complied with borders on frivolity.
Section 19-27-31 requires that the petition set forth "the names of the persons to be adversely affected" or who are "directly interested" in the vacation of the platted right of way. The parties so named are to be made defendants, and "publication of summons shall be made one time in a newspaper published" or circulated in the county where the land is situated. The cause is then triable "at any time after the expiration of five days from said publication and the service of process upon the named defendants."
The City of Jackson and all landowners adjoining the platted alleyway were set forth in the plaintiffs' amended complaint as nominal defendants. In addition, the proper statutory publication was accomplished. Quite obviously then, Section 19-27-31 was fully complied with by the plaintiffs in this case. This brings us to the essence of Saxton's argument under this assignment, which is that his objections to the plaintiffs' proof of who the property owners were should have been sustained by the chancellor.
At trial, the landowners proved the identity of the adjacent property owners through the testimony of a local attorney who had examined the land records of the chancery clerk to determine the record owners of the lots. Pursuant to this testimony, the landowners entered into evidence certified copies of the deeds and other evidences of title as to the named defendants. Saxton objected to the testimony of the attorney on the ground that the attorney was an expert witness who had not been identified in response to the expert witness interrogatory propounded to the plaintiffs. The chancellor overruled the objection on the ground that the attorney was not an expert witness.
On this, the chancellor was eminently correct. Saxton's interrogatory No. 3 asks plaintiffs to identify each person whom they expected to call as an expert witness against the defendant. The landowners' witness offered no expert opinion but merely testified as to what the records in the chancery clerk's office reflected. The testimony of an attorney as to what his examination of the local land records reflected is *1015 not the type of expert testimony subject to an interrogatory under Rule 26(b)(4)(A)(i) of the Miss.R.Civ.P. Furthermore, Saxton can hardly claim surprise when the identity of these property owners was pled in plaintiffs' complaint. Allowing the attorney to testify on this peripheral issue did not cause any prejudice to Saxton.
Saxton objected to the entry into evidence of the certified copy of the deeds, and other documentary evidence of title of the nominal defendants, on the ground that the documents had not been produced pursuant to Saxton's request for production. A review of those requests for production of documents shows clearly that Saxton never requested production of these particular documents. There is no merit to this assignment of error.

IV.

DID THE PUNITIVE DAMAGES AWARD VIOLATE THE "EXCESSIVE FINES CLAUSE" OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION?
Saxton perfunctorily asserts that the punitive damage award in this case violates the Eighth Amendment. No supporting authority is cited and less than one page is devoted to this argument. Under our familiar rule, we will not consider such a perfunctory argument unsupported by authority. Devereaux v. Devereaux, 493 So.2d 1310, 1314 (Miss. 1986). There is no merit to this assignment of error.
The grant of permanent injunction, compensatory damages and punitive damages is affirmed.
AFFIRMED.
HAWKINS, P.J., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., and DAN M. LEE, P.J., not participating.
NOTES
[1] Miss.S.Ct.R. 6(a) repealed by new Mississippi Supreme Court Rule, effective January 1, 1988.