LEE, J.,
for the Court:
¶ 1. Raymon J. Grady and James M. Grady had an interest as owners in a particular piece of property located in Monroe County which is the subject of this appeal. Prior to Raymon Grady and James Grady acquiring ownership of the property, Harley Walls had entered, into two leases with the previous owner with an option to purchase on the subject property. Subsequently, the Gradys denied Walls his option to purchase. It is from this denial that Walls filed an action requesting the property be conveyed to him pursuant to the terms of the lease, or in the alternative, he be awarded damages based on his expenses for improvements and repairs and the proceeds received from timber that had been cut from the land. The chancellor held that Walls was entitled to the total sum of $16,500 in damages for the expenses he incurred for improvements and repairs to the property. It is from this judgment that the appellants, Raymon J. Grady and his son, James M. Grady, appeal. The Gradys present the following issues on appeal (1) whether the damage award was excessive and contrary to the overwhelming weight of the evidence and should be submitted for remittitur, (2) whether the trial court abused its discretion by awarding damages based on the proof shown at trial, and (3) whether this matter should be remanded on the issue of damages only pursuant to Miss.Code Ann. § 11-1-55 (Rev.1991). Finding these issues to be without merit we affirm the holding of the chancellor.
FACTS
¶ 2. Since 1956 Harley Walls’s parents had lived in a house located on the property owned by Ms. Grady. Up until 1972 there was no lease; instead Walls’s father paid the rent on a yearly basis. The house was in disrepair, and Walls was going to move his parents in a house trailer near his brother. Ms. Grady executed a power of attorney for Ms. Blue; therefore, Ms. Blue handled Ms. Grady’s business dealings regarding the property in question.
¶ 3. Walls contacted Ms. Blue expressing his concerns about the condition of the house and his desire to relocate his parents. Ms. .Blue urged Walls to continue to allow his parents to rent the house owned by Ms. Grady. Walls stated that repairs were needed and that he did not wish to make these repairs if he did not have an interest in the property. Walls asked Ms. Blue to sell the property to him. Ms. Blue replied that if she sold the property the government would take all of the money. As a result, Walls entered into a five-year lease and option to purchase with Ms. Blue on behalf of Ms. Grady. Walls did not purchase the land at the conclusion of the first lease.
¶ 4. Since Ms. Grady was still alive and the government would still have a claim to any money received from the lease, a second five-year lease and option to purchase was signed. Both leases required Walls to make reasonable improvements and repairs to the property during the term of his lease. They further required Walls to maintain records of his expenditures relative to the improvements and repairs. However, testimony at trial disclosed that although Walls had kept records of expenditures relative to improvements and repairs, they were destroyed in a fire. The lease further stated, “If the party of the second part, Harley Walls, elects to exercise his option to purchase this real property pursuant to paragraph eight herein by the party of the first part — herein but the party of the first part refuses or is unable to convey a marketable title to said land to the said Harley Walls, then and only in that event the party of the second *535 part shall be reimbursed for the expenditures he has incurred in improving the property.” Walls did make improvements to the property.
¶ 5. Testimony revealed that Walls had repaired and improved the house. Based on the testimony presented by Walls and others, the court made a finding of fact that Walls had made the following repairs and improvements: repairing and remodeling by a competent contractor [i.e., window casings, paneling, siding, flooring, plug-ins, joists, and repairs to the porch and fireplace], building at least a quarter mile of fence and continuing to maintain the fence around the property for the time Walls was in possession of the property, bushhogging the property more than once per year for eight years, cutting the undergrowth out from under the timber, building a road into the property and buying an iron gate, spending his own time, tractor and equipment in maintaining the property, and building a shed for tools and equipment. Walls quoted a value of $9,335 for the aforementioned repairs and improvements, but added that this was a conservative estimate because some repairs and improvements had accidently been omitted from the list. Walls did have a few checks for which he stated said sums were paid to individuals for their labor on the property, but not all of the checks revealed on then-face that payment had been made for such services. Walls continued to maintain the property; however, prior to the second lease and option expiring, Walls observed a notice for the conveyance of the property in a local paper.
¶ 6. In 1982, during the lifetime of Ms. Grady, Ms. Blue had conveyed the property to Raymon Grady and denied Walls his option to purchase. Walls contacted Ms. Blue and Mr. Raymon Grady in an attempt to exercise his option, but they refused to sell the subject property. Testimony at trial revealed that both prior to and after acquiring the subject property, Raymon J. Grady and James M. Grady had made infrequent visits to the property.
¶ 7. Though visits to the property were infrequent after he acquired the property, Raymon J. Grady removed and sold timber therefrom with an estimated value of $40,-000 to $50,000. Originally, Raymon Grady testified that he had received $10,763 as compensation for the timber; however, he subsequently testified that it was $15,000. Subsequently to the civil action which is the subject of this appeal being filed, Ray-mon Grady conveyed the property to his son, James M. Grady.
DISCUSSION
I. WHETHER THE DAMAGE AWARD WAS EXCESSIVE AND CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND SHOULD BE SUBMITTED FOR REMITTITUR.
II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION . BY AWARDING DAMAGES BASED ON THE PROOF SHOWN AT TRIAL.
¶ 8. The Gradys argue that the chancellor abused his discretion when he awarded the sum of $16,500 based on conjecture and speculation instead of tangible records as required by the leases and that Walls should not have been awarded more than the sum of $9,335, an amount he could reasonably prove.
¶ 9. The total sum of damages is a finding of fact. When a chancellor makes an ultimate finding of fact, our scope of review as an appellate court requires that we reverse only in a case of manifest error. R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss.1988); see also Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 225 (Miss.1969); Illinois Cent. R. Co. v. Ragan, 252 Miss. 335, 340-341, 173 So.2d 433, 434 (Miss.1965). Applying this standard of review, this Court must now examine the arguments presented by the Gradys and whether the actions of the chancellor equal an abuse of discretion and manifest error in light of the facts and applicable law.
*536 ¶ 10. The Gradys continue their argument and assert the judgment of $16,500 plus eight percent interest is excessive and should be submitted for remittitur. The Gradys argue that Walls only gave testimony based on speculation and that even on this speculation, Walls had only enumerated the sum of $9,335 for improvements and repairs. Additionally, the Gra-dys argue the aforesaid amount is greater than the last appraisal of the property performed in 1979 of $12,226.77. The Gra-dys assert that the two leases entered into between Walls and Ms. Blue required Walls to keep good and accurate records on improvements and repairs and his failure to have such was a breach of contract and based only on speculation; therefore, he is not entitled to the sum of $16,500 awarded by the chancellor.
¶ 11. To support their argument for re-mittitur the Gradys quoted the following law: “Appellant asks remittitur of $35,000 or remand for a new trial on the damages. It contends that the proof as to the gravel loss is too speculative and uncertain to form a basis for that part of the verdict which necessarily had to be attributed to the loss of the gravel that periodically settled into a bar in the creek bend.” Mississippi State Highway Commission v. St. Catherine Gravel Co., 380 So.2d 231, 232 (Miss.1979). This law is not applicable in the case at bar. This contention was stated as it pertained to the law applicable to causes of action involving eminent domain and the limitations of damages in an eminent domain case due to the before and after rule and the handling of loss of profits. This Court declines to apply this law in the case at bar and instead finds that the law enumerated by the chancellor in the opinion and judgment of the court is applicable. Accordingly, under Mississippi law, Walls is entitled to be awarded monetary damages.
¶ 12. In the opinion and judgment entered by the chancellor, he cited R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss.1988), for the contention that a party will still be liable for an amount of damages even if the proof as to the amount of damages, if any, is indeterminate and too uncertain to justify the lower court’s award. It is well recognized that “Mississippi is equally firm in its determination that a party will not be permitted to escape liability because of the lack of a perfect measure of damages his wrong has caused.” Id. Further, the court stated, “It is stated in Ham Marine, Inc. v. Dresser Industries, Inc., 72 F.3d 454, 462 (5th Cir.1995), that the right to recover is not precluded by uncertainty regarding exact amount of damages. The evidence need only lay a foundation upon which the trier of fact can form [a] fair and reasonable assessment of the amount of damages.” This Court has reviewed the record and the judgment and the aforementioned laws and finds the chancellor did not abuse his discretion and commit manifest error in awarding the total sum of $16,500 in damages.
¶ 13. When this Court reviews the record, we accept all facts and reasonable inferences contained within the record which support the chancellor’s findings. Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993). The chancellor is in a better position than this Court to determine the credibility of the witness, and this Court is not to replace the chancellor’s judgment with our own. Id. While Walls lacked numerous records relative to his expenditures on improvement and repairs to the property, the chancellor properly considered the testimony of Walls, his wife, and his brother-in-law, and it was within the discretion of the chancellor to determine that the testimony was credible and established a foundation on which to base damages.
¶ 14. Walls enumerated numerous improvements and repairs to the house and property for which he placed an estimate of $9,335. Walls testimony was reiterated by his wife and his brother-in-law, Herman Pearson. The testimony given by both supported the numerous repairs and im *537 provements listed during the testimony of Walls. The testimony given by Herman Pearson verified that he had personally performed labor, repairs and improvements on the house. Pearson assigned an estimated value of $3,000-$3,500 for the materials and labor relative to his involvement. Additionally, though the Gradys were rarely present during the lease of the property by Walls and did not concede to much relative to work and repairs being performed on the subject property, they admitted bushhogging had been performed on the property during this time. Furthermore, testimony from additional witnesses revealed a structure had been erected to store a tractor on the subject property. After hearing all the testimony presented at trial, the chancellor entered his opinion and judgment.
¶ 15. The chancellor held that not only had credible evidence been presented which revealed Walls had made repairs, expenditures, and improvements upon the property in a sum exceeding $10,000, but in addition, in the final judgment the chancellor noted that the $10,000 estimate did not count for Walls’s time for “labor and use of his own equipment to cut the fire lanes and his labor for maintaining fences, bushhogging, building the shed for tools and equipment, and generally tending the property for some eight years, protecting the timber.” While different estimates may have been reached, the sum of $16,500 is reasonable. The record does not show the chancellor abused his discretion or that a manifest error was committed on his part in arriving at this total sum for damages. Therefore, this Court finds these issues to be without merit.
III. WHETHER THIS MATTER SHOULD BE REMANDED ON THE ISSUE OF DAMAGES ONLY PURSUANT TO MISS. CODE ANN. § 11-1-55.
¶ 16. In light of the decision of this Court regarding issues one and two, it is unnecessary to entertain a discussion of the argument presented in issue three and likewise, we find it to be without merit.
¶ 17. In addition, the Gradys are assessed statutory damages of fifteen per cent pursuant to Miss.Code Ann. § 11-3-23 (Rev.1991).
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF MIONROE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED TO THE APPELLEE. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ„ CONCUR.